[No. S090666. Dec. 24, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
BAU A. MOOC, Defendant and Appellant.

**COUNSEL**

Jeffrey Wilens, under appointment by the Supreme Court, for Defendant and Appellant.

Eric S. Multhaup for California Attorneys for Criminal Justice as Amicus Curiae on behalf of Defendant and Appellant.

Carl C. Holmes, Public Defender (Orange), Deborah A. Kwast, Chief Deputy Public Defender, Kevin Phillips, Assistant Public Defender, and Lee Blumen, Deputy Public Defender for California Public Defenders Association and Orange County Public Defender's Office as Amici Curiae on behalf of Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert Shaw, Pamela A. Ratner, Adrianne S. Denault and Marilyn L. George, Deputy Attorneys General, for Plaintiff and Respondent.

Joseph W. Fletcher, City Attorney (Santa Ana), Hugh Haliford and Denah H. Yoshiyama, Assistant City Attorneys, for City of Santa Ana as Amicus Curiae on behalf of Plaintiff and Respondent.

Tom Haas, City Attorney (Walnut Creek) and Paul M. Valle-Riestra, Assistant City Attorney, for the Cities of Alameda, Bakersfield, Barstow, Buena Park, Carlsbad, Emeryville, Hayward, Laguna Beach, Menlo Park, Monrovia, Monterey, Napa, Newport Beach, Pleasanton, San Pablo, Sausalito, Sunnyvale, Tracy and Walnut Creek as Amici Curiae on behalf of Plaintiff and Respondent.

Jones & Mayer, Martin J. Mayer and Michael R. Capizzi for California State Sheriff's Association, California Police Chiefs Association and California Peace Officers Association as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**WERDEGAR, J.**— ▇▇▇ In *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305] (*Pitchess*), we recognized that a criminal defendant may, in some circumstances, compel the discovery of evidence in the arresting law enforcement officer's personnel file that is relevant to the defendant's ability to defend against a criminal charge. "In

1978, the California Legislature codified the privileges and procedures surrounding what had come to be known as '*Pitchess* motions' . . . through the enactment of Penal Code sections 832.7 and 832.8 and Evidence Code sections 1043 through 1045." (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 81 [260 Cal.Rptr. 520, 776 P.2d 222] (*Santa Cruz*), fns. omitted.) By providing that the trial court should conduct an in camera review, the Legislature balanced the accused's need for disclosure of relevant information with the law enforcement officer's legitimate expectation of privacy in his or her personnel records. (*Id.* at pp. 83-84.)

In this case, defendant Bau A. Mooc, charged with battery on a peace officer, contended at trial that it was the officer who had provoked the fight. To support this contention, defendant sought discovery of the officer's personnel records to determine if they contained evidence that the officer had previously been accused of, disciplined for, or sued for using excessive force. The trial court examined the records provided by the custodian of the requested records, here the City of Santa Ana Police Department (Department), and declined to order disclosure. Defendant was later convicted. On appeal, the Court of Appeal found the appellate record did not contain the records the trial court had examined, so it directed the Department to submit such records to the appellate court.

After receiving such records, circumstances led the appellate court to believe it had not been given the records that, by law, were required to be disclosed to the trial court. The Court of Appeal thus took the unusual step of ordering the custodian of the records to deliver to the appellate court the entire personnel file of the officer in question. After examining this file, which apparently was much more extensive than anything previously provided by the Department, the appellate court concluded the file had never been properly presented to the trial court for the exercise of that court's discretion when ruling on the *Pitchess* motion. Accordingly, the appellate court reversed defendant's conviction and remanded to permit the trial court to conduct a renewed *Pitchess* hearing after considering the officer's complete personnel file. We granted the People's petition for review.

This case, which has generated no small amount of excitement from various governmental entities and organizations across this state,[1] requires this court to examine the nuts and bolts of a *Pitchess* motion, to explain such

---

[1]We have received amicus curiae briefs, or letters regarding the petition for review, from California Attorneys for Criminal Justice, the California Public Defenders Association, the Fontana Police Department, the Office of the District Attorney for Orange County, the Orange County Public Defender's Office, the Office of the City Attorney for Arcadia, the Office of the City Attorney for San Diego, the Office of the District Attorney for San Diego, the Office of the City Attorney for Santa Ana, the City of Simi Valley, a law firm jointly representing

practical but important issues as what the custodian of records must disclose to the trial court when faced with a *Pitchess* motion, what must be made part of the record, and what an appellate court can do to remedy perceived omissions in the appellate record. As we explain, we conclude (1) the Court of Appeal erred to the extent it suggested the custodian of records must, in response to every *Pitchess* motion, produce the entire personnel file of the officer or officers in question; (2) that, in light of evidence in this case suggesting the custodian of records failed to provide the appellate court with those records it had provided to the trial court, the Court of Appeal should have acted to augment the record by remanding the case to the trial court to allow that court to settle the record as to which documents it examined when ruling on the *Pitchess* motion; and (3) the absence of any potentially relevant evidence in the officer's complete personnel record justifies forgoing remand in this case and, instead, simply reversing the judgment of the Court of Appeal, thereby reinstating the judgment of conviction. Accordingly, we reverse the judgment of the Court of Appeal.

## FACTS

Defendant Mooc was detained in the Santa Ana jail. On February 21, 1998, he engaged in a fight with Detention Officer Frank Garcia and was charged with committing a battery on a custodial officer causing injury. (Pen. Code, § 243, subd. (c).) Defendant was also charged with having inflicted great bodily injury on Garcia (*id.*, § 12022.7), having a prior strike conviction (*id.*, §§ 667, subds. (d) & (e)(1), 1170.12, subds. (b) & (c)(1)), having suffered a prior serious felony conviction (*id.*, § 667, subd. (a)(1)), and having served a prior prison term (*id.*, § 667.5, subd. (b)).

On April 13, 1998, defendant filed a *Pitchess* motion. He sought the following: "Any and all documents concerning the above-mentioned officer(s) as defined in Penal Code section 832.8(e); records maintained pursuant to Penal Code section 832.5(b); and, any other records pertaining to the above-mentioned officer(s) and that pertain to: [¶] (a) Record of any incident of force, aggressive conduct or violence directed at persons detained, arrested, or in custody, and/or the giving of false testimony; [¶] (b) Record of any complaints registered with [the custodian of records, here the Department] against the officer(s) by any prisoner, fellow prisoner, or private citizen alleging force, aggressive conduct, or violence directed at persons

---

the California State Sheriff's Association, the California Police Chiefs Association, and the California Peace Officers Association, and a law firm representing the Cities of Alameda, Bakersfield, Barstow, Buena Park, Carlsbad, Emeryville, Hayward, Laguna Beach, Menlo Park, Monrovia, Monterey, Napa, Newport Beach, Pleasanton, San Pablo, Sausalito, Sunnyvale, Tracy and Walnut Creek.

detained, arrested, or in custody, and/or the giving of false testimony; [¶] (c) Record of disciplinary actions taken against the officer(s) or possible disciplinary actions, to be taken as a result of any complaint or investigation related to the above; [¶] (d) The name, address and telephone number of any person or persons submitting complaints of the above-mentioned acts, including, but not limited to, all persons who have filed subsequent civil claims or lawsuits against [the Department or its] agencies; [¶] (e) The name, address and telephone number of any person or persons interviewed in connection with investigation of force, aggressive conduct, or violence directed at persons detained, arrested, or in custody, and/or the giving of false testimony; [¶] (f) Any and all information regarding the above officer(s) which forms the basis of current and/or pending civil litigation arising from government claims or lawsuits for force, aggressive conduct, or violence direct[e]d at persons detained, arrested, or in custody, and/or the giving of false testimony; [¶] (g) The records of any statements of psychiatrists, psychologists, therapists or consultants contained in [the Department's] files of the above-mentioned officer(s)."

Attached to defendant's *Pitchess* motion was a declaration from Defense Counsel Leonard Gumlia, in which he declared that he is "informed and believe[s] that Officer Garcia was the aggressor and that defendant Mooc acted in self-defense in response to Garcia's aggressive conduct." In support, the declaration cites the facts that defendant alleges he acted in self-defense and the police report of the incident states witnesses reported to police that Officer Garcia was the aggressor. The police report, also attached to the motion, indicates inmate witnesses Le, Vo and Solis all reported to the investigating officer that they saw defendant and Officer Garcia arguing and that Garcia then "rushed" defendant.

Officer Garcia's version of the events (as related at the preliminary examination) indicates defendant was the aggressor and that when Garcia told him to return to his module, defendant refused, turned to Garcia and said, "What the fuck, man, I have nothing to lose. Let's get it on!" Garcia reported that defendant then attacked him.

The People opposed defendant's *Pitchess* motion. The trial court held a hearing on April 24, 1998, and heard argument from both parties. The Department, custodian of the sought-after records, was represented by Assistant City Attorney Hugh Halford. The court decided defendant's allegations justified an in camera examination of the officer's personnel records that were potentially responsive to defendant's motion. Following the trial court's examination in chambers of the records provided by Halford, the court announced: "The record should reflect the Court's conducted an in

camera review of Officer Garcia's records and any other documents regarding that particular officer[.] I don't see anything really. [¶] Mr. Gumlia, candidly there's another incidence [*sic*] in determining its relevancy as the Court's concluded that it has very little, if any, probative value, and based upon that and [section] 1045 of the Evidence Code, the Court's going to decline allowing the defendant to peruse the officer's personnel records."

The following colloquy then occurred:

"MR. GUMLIA: My only request, then, and I made it before, is that in some way we allow there to be [a] record of what we looked at, whether it be his—I trust him as an officer of the court, if you want to send back a copy either that one incidence just to keep under—

"THE COURT: Is there an objection?

"MR. HALFORD: Yes, there is, your Honor. Those documents [must] be maintained by law for a certain period of time, at least five years after the incident involved. And if the Court would direct that that would be maintained for a particular period of time in the future, I would do so, be sure that it is.

"THE COURT: That's the orders.

"MR. HALFORD: I will make sure they're maintained for three years. Is that fine?

"MR. GUMLIA: I don't know i[f] that's fine or not. I don't want to be responsible if it's not fine.

"THE COURT: That's the request. That's the order.

"MR. GUMLIA: I just want to go on record because he complimented the Court's thoroughness and I want to too. [¶] I want to make sure I've done all I can [on] behalf of Mr. Mooc.

"THE COURT: You have and the record will so reflect."

Accordingly, neither the originals nor copies of the personnel records examined by the trial court were maintained in the case file.

Defendant was convicted of battery on a custodial officer causing injury, and the charged enhancement allegations were found true, although at sentencing the trial court struck the prior serious felony conviction enhancement (Pen. Code, § 667, subd. (a)(1)). The court sentenced defendant to an aggregate term of five years in prison.

On appeal, defendant requested the Court of Appeal to augment the record to include the "[p]ersonnel records produced at the hearing . . . held on April 24, 1998 and reviewed in camera by the [trial] court. The Santa Ana City Attorney's Office, which opposed the Pitchess motion, was ordered to retain the records for three years." Although the People opposed the request, the appellate court granted defendant's request in an order filed on November 2, 1999. The court's order stated: "The City Attorney of Santa Ana and Hugh Halford, Assistant City Attorney, are ordered to transmit to this court, in a sealed envelope, the personnel records of Detention Officer Frank Garcia that were reviewed by the trial court in camera under a *Pitchess* motion on April 24, 1998."

In response, the City Attorney for the City of Santa Ana (City Attorney), representing the Department, moved on November 16, 1999, to modify the appellate court's order to permit it to file copies of the requested documents instead of the originals. In the alternative, the City Attorney offered to send a custodian with the original documents and a set of copies so the court could verify for itself that the copies were accurate. The City Attorney also stated the Department was "willing to provide the originals under any order that the Court believes is appropriate to ensure that the custody of such records remains with the Department and the Department does not violate the provisions of California Penal Code section 832.5."

The Court of Appeal denied the Department's motion, and the custodian of records thereafter filed certain documents with the court. Believing those documents were not the ones examined by the trial court, the Court of Appeal directed the Attorney General to explain, at oral argument, what the court considered to be discrepancies in the record. The Court of Appeal informed the parties they "should also be prepared to discuss whether this court may require the Santa Ana Police Department to turn over Officer Garcia's entire personnel file to this court for an in camera review."

At oral argument, the appellate court explained it was "informed that the Santa Ana Police Department and City Attorney's Office *regularly, systematically, and secretly* censored all personnel files before conveying them to any court for in camera review, removing all workers' compensation claims or other records the agencies deemed superfluous." As a result, the Court of Appeal ordered the City Attorney and the Department to transmit Officer Garcia's entire personnel file to the court. The Department thereafter filed what the appellate court termed "an entire evidence box of files, forms, folders and records." The court commented that "[n]ot surprisingly, more than one reference was found in the *complete* file which a court could deem to be potentially relevant."

Addressing the merits of the appeal, the appellate court concluded that the trial court "was barred from ever exercising its discretion. Because the trial court never received the *complete* personnel file to review, its decision on the motion was without any rational basis. [Citation.] When the trial court's ruling on a *Pitchess* motion occurs without a review of the personnel file—due to the systematic censoring of all material by an agency or by the court's refusal to review the file in camera (see, e.g., *People v. Gill* (1997) 60 Cal.App.4th 743, 750 [70 Cal.Rptr.2d 369])—the procedures of Evidence Code section 1043 et seq. have been violated, and the ruling must be reversed."

The Court of Appeal also found the prosecutor had committed misconduct in his cross-examination of two defense witnesses by implying in his questions that the witnesses had agreed with a third party to blame Officer Garcia for the assault, without then calling the alleged third party to the stand or otherwise introducing evidence to support the insinuation.

Considering the erroneous *Pitchess* ruling together with the prosecutorial misconduct, the appellate court reversed the judgment and remanded the case, directing the trial court to strike the great bodily injury enhancement before retrying the matter[2] and to conduct a new in camera hearing on defendant's *Pitchess* motion before such retrial. The appellate court further instructed the trial court that if the hearing revealed discoverable information in Officer Garcia's personnel file, the trial court should grant the requested discovery before retrying the case.

DISCUSSION

A. *Pitchess*

For approximately a quarter-century[3] our trial courts have entertained what have become known as *Pitchess* motions, screening law enforcement personnel files in camera for evidence that may be relevant to a criminal defendant's defense. This procedural mechanism for criminal defense discovery, which must be viewed against the larger background of the prosecution's constitutional obligation to disclose to a defendant material exculpatory evidence so as not to infringe the defendant's right to a fair trial (*United States v. Bagley* (1985) 473 U.S. 667, 674-678 [105 S.Ct. 3375, 3379-3381, 87 L.Ed.2d 481]; *Brady v. Maryland* (1963) 373 U.S. 83, 87 [83 S.Ct. 1194,

---

[2]The trial court had granted a defense motion to dismiss this enhancement for insufficient evidence.

[3]*Pitchess, supra*, 11 Cal.3d 531, was decided in 1974. The Legislature essentially codified *Pitchess* in 1978 when it enacted the statutory scheme discussed below.

1196-1197, 10 L.Ed.2d 215]; see also *In re Brown* (1998) 17 Cal.4th 873, 879 [72 Cal.Rptr.2d 698, 952 P.2d 715] [duty to disclose includes " 'favorable evidence known to . . . others acting on the government's behalf' "]), is now an established part of criminal procedure in this state. (*People v. Jackson* (1996) 13 Cal.4th 1164, 1219-1221 [56 Cal.Rptr.2d 49, 920 P.2d 1254]; *City of San Jose v. Superior Court* (1993) 5 Cal.4th 47 [19 Cal.Rptr.2d 73, 850 P.2d 621]; *Santa Cruz, supra,* 49 Cal.3d 74; *People v. Memro* (1985) 38 Cal.3d 658 [214 Cal.Rptr. 832, 700 P.2d 446].)

The statutory scheme is set forth in Evidence Code sections 1043 through 1047 and Penal Code sections 832.5, 832.7 and 832.8. When a defendant seeks discovery from a peace officer's personnel records, he or she must "file a written motion with the appropriate court" (Evid. Code, § 1043, subd. (a)) and identify the proceeding, the party seeking disclosure, the peace officer, the governmental agency having custody of the records, and the time and place where the motion for disclosure will be heard (*id.,* subd. (b)(1)). In addition, the *Pitchess* motion must describe "the type of records or information sought" (Evid. Code, § 1043, subd. (b)(2)) and include "[a]ffidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that the governmental agency identified has the records or information from the records" (*id.,* subd. (b)(3)). The affidavits may be on information and belief and need not be based on personal knowledge (*Santa Cruz, supra,* 49 Cal.3d at p. 86), but the information sought must be requested with sufficient specificity to preclude the possibility of a defendant's simply casting about for any helpful information (*id.* at p. 85).

If the trial court concludes the defendant has fulfilled these prerequisites and made a showing of good cause, the custodian of records should bring to court all documents "potentially relevant" to the defendant's motion. (*Santa Cruz, supra,* 49 Cal.3d at p. 84.) The trial court "shall examine the information in chambers" (Evid. Code, § 1045, subd. (b)), "out of the presence and hearing of all persons except the person authorized [to possess the records] and such other persons [the custodian of records] is willing to have present" (*id.,* § 915, subd. (b); see *id.,* § 1045, subd. (b) [incorporating *id.,* § 915]). Subject to statutory exceptions and limitations, discussed below, the trial court should then disclose to the defendant "such information [that] is relevant to the subject matter involved in the pending litigation." (*Id.,* § 1045, subd. (a).)

There are several limitations on disclosure. The trial court "shall exclude from disclosure: [¶] (1) Information consisting of complaints concerning

conduct occurring more than five years before the event or transaction which is the subject of the litigation in aid of which discovery or disclosure is sought. [¶] (2) In any criminal proceeding the conclusions of any officer investigating a complaint filed pursuant to Section 832.5 of the Penal Code. [¶] (3) Facts sought to be disclosed which are so remote as to make disclosure of little or no practical benefit." (Evid. Code, § 1045, subd. (b).) In addition, when the litigation at issue "concerns the policies or pattern of conduct of the employing agency, the court shall consider whether the information sought may be obtained from other records maintained by the employing agency . . . which would not necessitate the disclosure of individual personnel records." (*Id.*, subd. (c).) The court, "[u]pon motion seasonably made by the governmental agency which has custody or control of the records to be examined or by the officer whose records are sought" (*id.*, subd. (d)), may make such orders "which justice requires to protect the officer or agency from unnecessary annoyance, embarrassment or oppression" (*ibid.*). The court shall also order that any peace officer records disclosed "not be used for any purpose other than a court proceeding pursuant to applicable law." (*Id.*, subd. (e).)

*Pitchess, supra*, 11 Cal.3d 531, and its statutory progeny are based on the premise that evidence contained in a law enforcement officer's personnel file may be relevant to an accused's criminal defense and that to withhold such relevant evidence from the defendant would violate the accused's due process right to a fair trial. *Pitchess* and Evidence Code sections 1043 through 1047 also recognize that the officer in question has a strong privacy interest in his or her personnel records and that such records should not be disclosed unnecessarily. Accordingly, both *Pitchess* and the statutory scheme codifying *Pitchess* require the intervention of a neutral trial judge, who examines the personnel records in camera, away from the eyes of either party, and orders disclosed to the defendant only those records that are found both relevant and otherwise in compliance with statutory limitations. In this manner, the Legislature has attempted to protect the defendant's right to a fair trial and the officer's interest in privacy to the fullest extent possible. (See *City of San Jose v. Superior Court, supra*, 5 Cal.4th at p. 53 ["The statutory scheme carefully balances two directly conflicting interests: the peace officer's just claim to confidentiality, and the criminal defendant's equally compelling interest in all information pertinent to the defense"].)

The parties and amici curiae argue many facets of this case, which we discuss below, but it is apparent most of the problems originate from a single fundamental procedural flaw that occurred in the trial court. After ruling defendant had complied with the statutory requirements of his *Pitchess* motion, including establishing good cause pursuant to Evidence

Code section 1043, subdivision (b)(3), the trial court properly went into chambers and conducted an in camera examination of the personnel records provided by Assistant City Attorney Halford, who represented the custodian of the identified records. But the trial court then fell into error, for it failed to make any record of what files, records, or documents Halford had provided to the court. Whether Halford brought to the court for review Officer Garcia's complete personnel file (what the appellate court called "an entire evidence box of files, forms, folders and records"), the "surprisingly small envelope" later provided to the Court of Appeal, or some other set of documents is unknown. The trial court made no log or index of the documents it reviewed. If the court asked Halford whether any documents were included in Garcia's complete personnel file but not presented to the court, there is no evidence of such questioning, for apparently no court reporter transcribed the in camera hearing.

Following its ruling that the documents provided by Halford contained no disclosable evidence, the trial court exacerbated its initial error by allowing those documents to be dispersed before creating a confidential record of them. Instead, the trial court permitted the City Attorney to retain possession of the records in question, based on Halford's promise to ensure the records would be maintained for three years. Thus, no record exists of what documents the trial court considered before it ruled no disclosure was necessary.

The trial court's failure to make a record of the documents it reviewed in camera set the wheels in motion for the present dispute. Without some evidence in the record indicating what the trial court reviewed, defendant was unable to obtain meaningful appellate review of the court's decision not to disclose any evidence in response to his *Pitchess* motion. Had the trial court retained copies of the documents it examined before ruling on the *Pitchess* motion, made a log of the documents it reviewed in camera, or just stated for the record what documents it examined (such transcript, of course, to be sealed), the Court of Appeal could have itself reviewed those documents (or augmented the record to include those documents) and determined whether the trial court had abused its discretion in refusing to disclose any of Officer Garcia's personnel records. (*People v. Jackson, supra,* 13 Cal.4th at pp. 1220-1221 ["A trial court's decision on the discoverability of material in police personnel files is reviewable under an abuse of discretion standard"]; *People v. Breaux* (1991) 1 Cal.4th 281, 311-312 [3 Cal.Rptr.2d 81, 821 P.2d 585] [same].)

When a trial court concludes a defendant's *Pitchess* motion shows good cause for discovery of relevant evidence contained in a law enforcement officer's personnel files, the custodian of the records is obligated to bring to

the trial court all "potentially relevant" documents to permit the trial court to examine them for itself. (*Santa Cruz, supra,* 49 Cal.3d at p. 84.) A law enforcement officer's personnel record will commonly contain many documents that would, in the normal case, be irrelevant to a *Pitchess* motion, including those describing marital status and identifying family members, employment applications, letters of recommendation, promotion records, and health records. (See Pen. Code, § 832.8.) Documents clearly irrelevant to a defendant's *Pitchess* request need not be presented to the trial court for in camera review. But if the custodian has any doubt whether a particular document is relevant, he or she should present it to the trial court. Such practice is consistent with the premise of Evidence Code sections 1043 and 1045 that the locus of decisionmaking is to be the trial court, not the prosecution or the custodian of records. The custodian should be prepared to state in chambers and for the record what other documents (or category of documents) not presented to the court were included in the complete personnel record, and why those were deemed irrelevant or otherwise nonresponsive to the defendant's *Pitchess* motion. ▆▆▆ A court reporter should be present to document the custodian's statements, as well as any questions the trial court may wish to ask the custodian regarding the completeness of the record. (See *People v. Jackson, supra,* 13 Cal.4th at p. 1221, fn. 10 [explaining that this court "reviewed the sealed record of the in camera proceeding"].)

▆▆▆ The trial court should then make a record of what documents it examined before ruling on the *Pitchess* motion. Such a record will permit future appellate review. If the documents produced by the custodian are not voluminous, the court can photocopy them and place them in a confidential file. Alternatively, the court can prepare a list of the documents it considered, or simply state for the record what documents it examined. Without some record of the documents examined by the trial court, a party's ability to obtain appellate review of the trial court's decision, whether to disclose or not to disclose, would be nonexistent. Of course, to protect the officer's privacy, the examination of documents and questioning of the custodian should be done in camera in accordance with the requirements of Evidence Code section 915, and the transcript of the in camera hearing and all copies of the documents should be sealed.[4] (See *People v. Samayoa* (1997) 15 Cal.4th 795, 825 [64 Cal.Rptr.2d 400, 938 P.2d 2] [after ruling on the

---

[4]The City Attorney, representing the Department, addresses the implication in the Court of Appeal's decision that the Department cannot be trusted to turn over to the trial court all potentially relevant evidence. Although the statutory scheme contemplates the trial court will be the entity that decides what information should be disclosed in response to a defendant's *Pitchess* motion, we agree with the City Attorney that whether or not the Department's obligation is to provide the entire personnel file or just that portion of the record it deems potentially responsive to a defendant's *Pitchess* motion, an unscrupulous custodian could

*Pitchess* motion, "[t]he magistrate ordered that all remaining materials be copied and sealed"].)

To the extent the Court of Appeal suggested the custodian of records must always produce the *entire* personnel file in response to a *Pitchess* motion, however, the appellate court overstated the custodian's obligation under *Pitchess* and Evidence Code sections 1043 and 1045. Pursuant to Evidence Code section 1043, subdivision (b)(2), the defendant in his or her *Pitchess* motion is required to identify the *"type* of records or information sought." (Italics added.) For example, in this case, defendant sought only documents, including disciplinary records or citizen complaints, pertaining to incidents of · "force, aggressive conduct or violence directed at persons detained, arrested, or in custody, and/or the giving of false testimony," as well as "[t]he records of any statements of psychiatrists, psychologists, therapists or consultants contained in [the Department's] files" for Officer Garcia. The custodian's obligation, therefore, was not to produce Officer Garcia's entire file, but only those documents in his file that were potentially responsive to defendant's specific request.

Because the trial court did not make a record of the evidence it considered when ruling on defendant's *Pitchess* motion, defendant's ability to gain review of the court's denial of that motion was compromised. Faced with the prospect of deciding defendant's appeal without evidence of what the trial court considered before it denied disclosure of any records or files, the Court of Appeal asked the City Attorney, representing the Department, to transmit to it those documents that Assistant City Attorney Halford had provided to the trial court for its in camera review, the same group of documents Halford had promised would be "maintained" for three years. Here the case took another unfortunate turn, for the City Attorney initially appeared reluctant to turn over the documents, seeking to provide only copies, and then turned over what the appellate court termed "a surprisingly small envelope, containing a police report of the incident forming the basis for the criminal charge and a single-paged form dated the day before the incident." The Court of Appeal believed this envelope did not comprise all potentially responsive documents in Officer Garcia's personnel file.

---

always remove evidence that reflected unfavorably on a peace officer. A criminal defendant would thus not be much better protected by a strict rule requiring production of an officer's entire personnel file in every case.

We also agree that attorneys in the Santa Ana City Attorney's Office are officers of the court, and that criminal defendants are protected by the fact that a representative of the custodian of records is placed under oath before responding to a trial court's questions during the in camera inspection of records. In addition, a criminal defendant who learns that relevant documents were improperly withheld may move for a new trial pursuant to Penal Code section 1181, subdivision 8, or seek relief by filing a petition for a writ of habeas corpus.

Unable to satisfy itself that it had before it the true and actual record of the proceedings below, and understandably frustrated by its consequent inability to review the trial court's decision on defendant's *Pitchess* motion, the appellate court nevertheless erred in directing the custodian of Officer Garcia's personnel records to lodge the entire personnel file with the court. Although the California Rules of Court[5] make provision for adding to the record on appeal, the unusual problem in this case could not be remedied by simply having the custodian of records lodge Officer Garcia's entire personnel record in the appellate court, for the Court of Appeal had no way to know how much of the complete file the trial court had reviewed before ruling on defendant's *Pitchess* motion.

A better solution to the problem was available. The uncertainty in the record would have justified remanding the case to the trial court with directions to hold a hearing to augment the record with the evidence the trial court had considered in chambers when it ruled on the *Pitchess* motion. Because the trial court should be aware of the evidence it considered in chambers when it decided not to disclose anything in Officer Garcia's personnel file, we are confident an augmentation of the appellate record prepared by the trial court itself would result in an accurate record on appeal.

This remedy is similar to that ordered by the appellate court in *Prescott v. Ralphs Grocery Co.* (1953) 115 Cal.App.2d 466 [252 P.2d 61]. In that case, a dispute arose as to what jury instruction had actually been given by the trial court. Unable to resolve the question on appeal, the appellate court remanded the matter to the trial court, together with all the briefing received by the parties, "with directions to certify to this court 'a true copy of the instruction as actually given by [the court] to the jury at the trial of this cause.'" (*Id.* at p. 466.) Had the Court of Appeal in this case followed this route, it would not have had to guess whether the "surprisingly small envelope" it had before it was in fact all the custodian had produced and all the trial court had considered.

Although the People raise a number of challenges to the appellate court's decision to reverse the judgment and remand for a new *Pitchess* hearing, we need not consider them in light of our conclusion that the Court of Appeal erred in demanding and then examining Officer Garcia's entire personnel file.

---

[5] Rule 12(a) of the California Rules of Court permits an appellate court, "on [its] own motion . . . on such terms as are deemed proper, may order that any part of the original superior court file, including any paper or record on file or lodged with the superior court, be deemed filed, be transmitted to it . . . ." In addition, rule 12(b) of the California Rules of Court provides: "If any material part of the record, or of any transcript or appendix, is incorrect in any respect . . . the reviewing court, on suggestion of any party or on its own motion, may direct that it be corrected or certified."

Having concluded the trial court erred by failing to make a record of what it considered when ruling on defendant's *Pitchess* motion, and that the Court of Appeal erred in directing the custodian to provide the complete personnel file of Officer Garcia, we consider the proper resolution of this case. Although we could return the case to the appellate court with directions to remand it to the trial court to settle the record, to delay finality. of this case any longer seems imprudent, if unnecessary.

We have before us the complete personnel file of Officer Garcia, and we may assume the trial court examined some subset of the complete file. Although the Court of Appeal found "more than one reference . . . in the *complete* file which a court could deem to be potentially relevant" to defendant Mooc's claim of self-defense, after independently examining the same record, we respectfully disagree. Our examination of the complete personnel record reveals only one item that is even remotely responsive to the language of defendant's *Pitchess* motion. Because the incident is largely irrelevant to a potential claim of self-defense, we believe the trial court likely would have abused its ·discretion had it ordered such information disclosed. (See Evid. Code, § 1045, subd. (b)(3) [the trial court "shall exclude from disclosure" "[f]acts sought to be disclosed which are so remote as to make disclosure of little or no practical benefit"].) Indeed, the trial court itself referred to an incident reported in the personnel documents, but found it was of little relevance or probative value and, hence, not disclosable.

Finding no disclosable evidence in the complete personnel file, we conclude the trial court did not abuse its discretion in declining to disclose any item from the subset of the complete file that that court presumably considered. Accordingly, the Court of Appeal's decision to remand the case to the trial court for a further *Pitchess* hearing is unsupportable.

### B.   *Prosecutorial Misconduct*

■   To support his claim of self-defense, defendant intended to call inmates Le and Vo, who claimed to have observed the fight with Officer Garcia and who would testify that Garcia, not defendant, was the aggressor. In a pretrial hearing on defendant's motion in limine, defense counsel stated he had received a police report that noted an inmate named Solis had yelled out during the fracas that the inmates should all claim Officer Garcia was to blame for the fight. Counsel complained that he had tried to subpoena Solis, but was informed the inmate had since been transported out of the state and was unavailable to testify. The prosecutor stated he intended to impeach Le and Vo with the testimony of another inmate, Attila Puskas, who would

testify in the People's case-in-chief that he heard Solis's shouted-out proposal to blame Garcia. Defendant objected, claiming Puskas's proposed testimony would be hearsay and not otherwise admissible.

The trial court opined: "I can foresee [the testimony] coming in. I could see it not coming in also, depending upon how the testimony goes down." The parties agreed to leave the matter under submission with the trial court, subject to a de novo examination of the issue; they also agreed not to mention the subject in their opening statements.

At trial, the prosecutor cross-examined Le by asking whether he knew inmate Solis. Defendant objected. At sidebar, defense counsel objected on the grounds that the proposed line of cross-examination would elicit both inadmissible hearsay and irrelevant evidence. The trial court overruled the objections. Back on the record, the prosecutor asked Le if Solis had gathered the inmates who witnessed the assault and told them to blame Officer Garcia. Le replied, "No, he did not gather the other people, he just said that what he saw [*sic*]." Later, cross-examining Vo, the prosecutor asked if Solis had told the inmates to blame Garcia. Vo simply denied it. The prosecution did not call Puskas to the stand.

Defendant argues the Court of Appeal properly found the prosecutor had committed misconduct by insinuating in cross-examining Le and Vo that they had conspired with a third inmate to falsely blame Officer Garcia for the fight when no evidence provided a factual basis for this insinuation. Assuming for argument the issue is properly before us,[6] we conclude there was no misconduct.

Defendant relies on our decision in *People v. Perez* (1962) 58 Cal.2d 229 [23 Cal.Rptr. 569, 373 P.2d 617, 3 A.L.R.3d 946].[7] In that case, we explained that " 'It was improper to ask questions which clearly suggested the existence of facts which would have been harmful to defendant, in the absence of a good faith belief by the prosecutor that the questions would be answered in the affirmative, or with a belief on his part that the facts could be proved, and a purpose to prove them, if their existence should be denied.' " (*Perez, supra*, at p. 241, quoting *People v. Lo Cigno* (1961) 193 Cal.App.2d 360, 388 [14 Cal.Rptr. 354].)

---

[6]Although defendant objected on hearsay and relevancy grounds, it does not appear he preserved this issue for appeal by objecting on the theory now presented. (*People v. Hill* (1998) 17 Cal.4th 800, 820 [72 Cal.Rptr.2d 656, 952 P.2d 673].)

[7]*People v. Perez, supra*, 58 Cal.2d 229, was overruled on another point in *People v. Green* (1980) 27 Cal.3d 1, 27-34 [164 Cal.Rptr. 1, 609 P.2d 468]. (See *People v. Poggi* (1988) 45 Cal.3d 306, 335-336 [246 Cal.Rptr. 886, 753 P.2d 1082].) *People v. Green* was itself overruled on yet a different point in *People v. Martinez* (1999) 20 Cal.4th 225 [83 Cal.Rptr.2d 533, 973 P.2d 512].

In the instant case, the record shows defense counsel recognized the existence of a police report describing how an inmate named Solis had yelled out during the fracas that the inmates should blame Officer Garcia for starting the fight. We thus may surmise the prosecutor had a good faith belief that he could have produced a witness to provide a factual basis for the questioning of Le and Vo. As we stated in *People v. Bittaker* (1989) 48 Cal.3d 1046, 1098 [259 Cal.Rptr. 630, 774 P.2d 659], "one can readily imagine that by the time he could offer rebuttal evidence the prosecutor might have concluded that such additional evidence was unnecessary."

Even assuming the prosecutor's question constituted misconduct, any such misconduct was harmless. Prior to closing argument, defendant raised the issue of the prosecutor's failure to establish a factual basis for his insinuations when cross-examining Le and Vo by moving to prohibit the prosecutor from mentioning this line of questioning in closing argument. The trial court apparently agreed, and in closing argument the prosecutor contended Le and Vo generally had perjured themselves, but he did not mention Solis, Puskas, or any alleged statement by Solis that the inmates should blame Officer Garcia for the fight. The jury was later instructed: "Do not assume to be true any insinuation [or] suggestion brought by a question asked a witness. A question is not evidence. . . ." We assume the jury followed this instruction. (*People v. Bonin* (1988) 46 Cal.3d 659, 699 [250 Cal.Rptr. 687, 758 P.2d 1217].) Under the circumstances, therefore, any misconduct was not prejudicial.

## CONCLUSION

With the exception of its holding directing the trial court to correct the abstract of judgment, the judgment of the Court of Appeal is reversed. Because the appellate court's decision rendered it unnecessary to resolve an unrelated evidentiary issue raised by defendant in that court, the cause is transferred to that court for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Chin, J., Brown, J., and Lillie, J.,* concurred.

On January 29, 2002, the opinion was modified to read as printed above.

---

*Presiding Justice, Court of Appeal, Second Appellate District, Division Seven, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.