Filed 12/27/13  P. v. Palacios CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B247517 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA394968) |
| v. | |
| CESAR PALACIOS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Melissa N. Widdifield and George G. Lomeli, Judges.  Affirmed.

———

Jennifer Hansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Steven  E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

———

An amended information, dated January 23, 2013, charged Cesar Palacios with five counts: (1) criminal threats (Pen. Code, § 422, subd. (a)[1]) (counts 1 and 3); (2) assault with a deadly weapon (§ 245, subd. (a)(1)) (count 2); (3) dissuading a witness by force or threat of force or violence (§ 136.1, subd. (c)(1)) (count 4); and (4) dissuading a witness (§ 136.1, subd. (b)(1)) (count 5). As to counts 1 and 4, the amended information specially alleged that Palacios had used a deadly and dangerous weapon, a knife, in committing the offenses within the meaning of section 12022, subdivision (b)(1). The jury found Palacios guilty on counts 1, 2 and 4 and not guilty on counts 3 and 5. The jury found true the special allegation under section 12022, subdivision (b)(1), as to counts 1 and 4. The trial court (Hon. George G. Lomeli) sentenced Palacios to a state prison term of six years, consisting of (1) the upper term of four years for dissuading a witness by force or threat in count 3, plus one year for the section 12022, subdivision (b)(1), enhancement; and (2) a consecutive term of eight months, one-third the two-year midterm, for criminal threats in count 1, plus four months, one-third the one-year term, for the section 12022, subdivision (b)(1), enhancement.[2]

Palacios appealed, challenging only his conviction for assault with a deadly weapon and asking us to independently review pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*) the trial court's examination of personnel records of two detectives from the Los Angeles Police Department. We affirm the judgment.

## DISCUSSION

1. *Palacios Has Presented No Basis to Reverse His Conviction for Assault with a Deadly Weapon*

As noted, the jury convicted Palacios on count 2 of assault with a deadly weapon, and the trial court imposed the three-year midterm on that count but stayed execution of sentence pursuant to section 654. Palacios contends the conviction on count 2 should be

---

[1] Statutory references are to the Penal Code unless otherwise specified.

[2] The trial court imposed the three-year midterm for assault with a deadly weapon in count 2 but stayed execution of sentence pursuant to section 654.

2

reversed because the trial court did not appropriately answer questions on that count asked by the jury during deliberations. We disagree.

According to the evidence, as relevant, in February 2012, Palacios and his girlfriend at the time were in his bedroom. Palacios became angry with her after learning she had a potential job opportunity because she had not asked his permission to get a job. Palacios began a verbal and physical altercation with her during which he called her derogatory names and grabbed, pushed and slapped her. As she cried, Palacios "told [her] to shut up because if his mom . . . hear[d] everything, he was going to kill [his girlfriend], and that's when he pulled out the shank and . . . [she] told him that [she] wanted just to go home . . . and he just told [her] that [she] better not make a report, call the police on him because he will send somebody to hurt [her] family." According to the girlfriend, the "shank" was a pocketknife that Palacios carried with him and had pulled on her on a prior occasion. During the altercation, Palacios, "when he brought [the pocketknife] out, he opened it and . . . put it on [her] neck." The blade of the pocketknife "was touching [her] neck, but [Palacios] didn't cut [her]."

The trial court instructed the jury under CALJIC No. 9.02 that, "[i]n order to prove [the] crime [of assault with a deadly weapon], each of the following elements must be proved: [¶] 1. A person was assaulted; and [¶] 2. The assault was committed [with a deadly weapon or instrument, other than a firearm][.]"

In closing argument, with respect to the charge of assault with a deadly weapon, the prosecutor stated, "So what evidence do we have about the assault with a deadly weapon? [The girlfriend] testified [Palacios] pull[ed] the knife out of his pant pocket, he opened the knife to expose the blade, and then he put it to her neck as he threatened her. He held the open blade at her throat. She didn't say he was cutting her with it, but he ha[d] it held to her throat."

On the first afternoon of deliberations, the jury asked about the second element necessary to prove assault with a deadly weapon: "What constitutes 'committed'? Does it matter if the knife was open and ready to be used or if it was just exposed? Does it matter if it was brought out after the assault if only a couple minutes later?" The trial

3

court responded, "With respect to the question raised, does it matter if it was brought out after the assault, I take 'it' meaning the knife, if only a couple minutes later? Well, the assault and the use of the knife have to be concurrent, at the same time. . . . Because if you're assaulting somebody with a weapon, the weapon has to be concurrent with the act." The court then reinstructed the jury on CALJIC No. 9.00 (assault—defined) and CALJIC No. 9.01 (assault—present ability to commit injury necessary). The court concluded, "What does matter is, also just a reminder, [the use of the deadly weapon] has to be concurrent, at the same time, of the act. So—because you said, 'what if he brought it out a few minutes later?' Then the answer would be, no, because it has to occur at the same time." Defense counsel agreed with the response, emphasizing that he believed the court's explanation to the jury that the assault and the use of the knife had to be concurrent was correct and answered the question.

The next morning, the jury asked the following question: "Hypothetically, if [Palacios] pulled the knife after pushing [his girlfriend] down in order to threaten her not to tell his mother, does that constitute assault with a deadly weapon?" The trial court responded, "I cannot answer that question because for me to answer that question means I would be, to some extent, putting my place in your place. You are the trier of fact. I am the trier of the law, if you will. You have to plug in the facts and the evidence that you heard to the jury instructions and the definition of, I take it in this question, what constitutes an assault with a deadly weapon. The only difference between a simple assault and an assault with a deadly weapon is that in one case . . . a deadly weapon is used." The court then read CALCRIM No. 875 on assault with a deadly weapon to further define the crime for the jury. As the court was excusing the jury to return to deliberate, one juror asked to reword the question, stating, "Just that there was a question as to when—if the assault happened, the physical assault . . . and then within minutes, say 5 minutes pass, and then there was . . . the knife in this case was presented in front of the victim. Does that constitute assault with a deadly weapon if there was, like, a little time separation between the actual, you know—[.]" The court responded, "Again, you're asking for this court to interpret the facts. Because the assault can occur at the moment

4

someone pulls out a weapon, the assault—because if you're not using a weapon and you assault some person—because as I read the instruction to you, there doesn't have to be any touching. There has to be a present ability to commit that act." After the jury returned to deliberate, defense counsel asked the court to repeat for the jury that the assault and the use of the deadly weapon had to be concurrent. The court declined to do so. The jury returned with the verdict after its lunch break.

Palacios contends that his conviction for assault with a deadly weapon should be reversed because, in responding to the jury questions, the trial court should have reminded the jury of the prosecutor's pronouncement during closing argument that the People were basing the assault with a deadly weapon charge on Palacios's pulling out his pocketknife and putting it to the victim's neck, not on any other physical contact that he had with her. Alternatively, he asserts that the court should have given the jury a unanimity instruction under CALJIC No. 17.01. According to Palacios, the court should have responded in one of these ways to eliminate jury confusion.

Neither of Palacios's proposed responses, however, was necessary to dispel what he believes was continued jury confusion. The prosecutor clearly stated during closing argument that the assault with a deadly weapon charge was based on Palacios's use of the pocketknife against the victim's neck. When the jury asked a question about assault with a deadly weapon, the court definitively stated three times that the assault and the use of the deadly weapon had to be concurrent. It told the jurors that, "if you're assaulting somebody with a weapon, the weapon has to be concurrent with the act" and that "what does matter is, also just a reminder, [use of the weapon] has to be concurrent, at the same time, of the act." It also explained to the jury that, if the defendant brought out a weapon a few minutes after assaulting the victim, then the answer to the charge of assault with a deadly weapon "would be, no, because it has to occur at the same time." In addition, the court reread instructions to the jury distinguishing the crime of assault with a deadly weapon from the crime of simple assault, which does not involve a deadly weapon. And, after the jury asked another question, the court instructed under CALCRIM No. 875, which further defined the crime of assault with a deadly weapon, telling jurors that, to

5

convict on that count, the defendant must do an act with a deadly weapon "that by its nature would directly and probably result in the application of force to a person" and that, when the defendant acted, he must have had the present ability to apply force with a deadly weapon, again emphasizing that the assault and the use of a deadly weapon had to be concurrent. These responses were within the court's discretion to determine an adequate explanation to address the jury questions. (See *People v. Beardslee* (1991) 53 Cal.3d 68, 97 ["Where the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information"].)

2. *Palacios Has Presented No Basis Under* Pitchess *for a Conditional Reversal of the Judgment*

"For approximately a quarter-century our trial courts have entertained what have become known as *Pitchess* motions, screening law enforcement personnel files in camera for evidence that may be relevant to a criminal defendant's defense." (*People v. Mooc* (2001) 26 Cal.4th 1216, 1225, fn. omitted (*Mooc*); see *Pitchess*, *supra*, 11 Cal.3d 531.) To balance the defendant's right to discovery of records pertinent to his or her defense, and thus to a fair trial, with the peace officer's reasonable expectation that his or her personnel records remain confidential, the Legislature adopted a statutory scheme requiring a defendant to meet certain prerequisites before a trial court considers his or her request. (*People v. Prince* (2007) 40 Cal.4th 1179, 1284-1285; *Mooc*, at p. 1227; see Pen. Code, §§ 832.5, 832.7, 832.8; Evid. Code, §§ 1043-1047 [statutory scheme governing *Pitchess* motions].)

A defendant seeking to initiate discovery must file a written motion that includes "[a] description of the type of records or information sought[,]" supported by "[a]ffidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that such governmental agency identified has the records or information from the records." (Evid. Code, § 1043, subd. (b)(2) & (3); *California Highway Patrol v. Superior Court* (2000) 84 Cal.App.4th 1010, 1019-1020.) "A showing of good cause is

6

measured by 'relatively relaxed standards' that serve to 'insure the production' for trial court review of 'all potentially relevant documents.' [Citation.]" (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1016 (*Warrick*).) To establish good cause, the defendant must present a "plausible scenario of officer misconduct . . . that might or could have occurred." (*Id.* at p. 1026.) A plausible scenario presents "an assertion of specific police misconduct that is both internally consistent and supports the defense proposed to the charges." (*Ibid.*) Assessing credibility or persuasiveness at the *Pitchess* discovery stage is inconsistent with the statutory language. (*Ibid.*) Depending on the circumstances, the defendant's factual scenario "may consist of a denial of the facts asserted in the police report." (*Id.* at pp. 1024-1025.) Nevertheless, the defendant must request information with sufficient specificity to preclude the possibility that he or she is "simply casting about for any helpful information . . . ." (*Mooc*, *supra*, 26 Cal.4th at p. 1226.)

If the trial court concludes the defendant has made a good cause showing for discovery, the custodian of records must bring to court all documents "'potentially relevant'" to the defendant's request. (*Mooc*, *supra*, 26 Cal.4th at p. 1226.) The court then examines the documents in chambers with only the custodian of records and such other persons he or she is willing to have present. (Evid. Code, §§ 915, subd. (b), 1045, subd. (b).) Subject to certain statutory exceptions and limitations, the court must disclose to the defendant "'such information [that] is relevant to the subject matter involved in the pending litigation.'"[3] (*Mooc*, at p. 1226; see also *Warrick*, *supra*, 35 Cal.4th at p. 1019.) "A trial court's ruling on a motion for access to law enforcement personnel records is subject to review for abuse of discretion." (*People v. Hughes* (2002) 27 Cal.4th 287, 330.) If the appellate court determines the existence of discoverable material,

---

[3]    The trial court must exclude from disclosure:  "(1) Information consisting of complaints concerning conduct occurring more than five years before the event or transaction which is the subject of the litigation in aid of which discovery or disclosure is sought. [¶] (2) In any criminal proceeding the conclusions of any officer investigating a complaint filed pursuant to Section 832.5 of the Penal Code. [¶] (3) Facts sought to be disclosed that are so remote as to make disclosure of little or no practical benefit." (Evid. Code, § 1045, subd. (b); see also *Mooc*, *supra*, 26 Cal.4th at pp. 1226-1227.)

7

it conditionally reverses the judgment and remands the matter to provide the defendant the opportunity to demonstrate any prejudice from the nondisclosure. (*People v. Gaines* (2009) 46 Cal.4th 172, 182-185.)

In his pretrial motion for *Pitchess* discovery, Palacios requested personnel records of the two Los Angeles Police Department detectives who interviewed him after his arrest. According to Palacios, the detectives employed improper tactics to coerce him into writing a second statement in which he admitted to initiating a physical altercation with his girlfriend and bringing out his knife. Palacios maintained that the *Pitchess* materials requested were necessary to support an argument that the second written statement was inadmissible and to assess witness credibility. At the hearing on the *Pitchess* motion, on August 8, 2012, the trial court (Hon. Melissa N. Widdifield) found good cause for an in camera hearing of personnel records regarding "false statements," "Fourth Amendment violations" and "coercive tactics." In camera, the court reviewed the personnel records of the detectives and found that one complaint as to one of the detectives was discoverable and that no other discoverable *Pitchess* information existed. (See *Mooc*, *supra*, 26 Cal.4th at p. 1229.) At Palacios's request, we reviewed the sealed transcript of that hearing.[4] Our review of the transcript reveals that the court properly exercised its discretion in determining that, aside from the complaint deemed discoverable, the personnel records did not contain any material appropriate for disclosure under *Pitchess*.

---

[4] Palacios did not provide us with the records viewed by the trial court.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED.


                                        ROTHSCHILD, Acting P. J.

We concur:



        JOHNSON, J.



        MILLER, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, Assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.