Filed 5/21/26  P. v. Angle CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D085018 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No.  INF1900061) |
| JAMES JOHN ANGLE III, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Rene Navarro, Judge.  Affirmed.

Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Stephanie H. Chow and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury rejected James John Angle's claim of self-defense and convicted him of first degree murder (Pen. Code,[1] § 187, subd. (a)) and being a felon in possession of a firearm (§ 29800, subd. (a)(1)). As to the murder count, it found true that Angle personally discharged a firearm causing death (§ 12022.53, subd. (d)). The trial court sentenced him to 50 years to life in prison.

Angle contends the trial court erred by not sua sponte instructing the jury on the lesser-included defense of involuntary manslaughter, effectively forcing an all-or-nothing verdict. We reject this contention. Angle also asks us to independently review sealed police personnel records under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*) to determine if the trial court abused its discretion in denying his motion for additional material. We have done so, find no error, and affirm.

## BACKGROUND

In 2018, Brian G. sold a generator to Angle. Angle later claimed the generator was originally his and accused Brian of stealing it and selling it back to him. When Brian refused Angle's demand for a refund, Angle began harassing him. He repeatedly appeared at the same locations as Brian, drove by Brian's home, and threatened to enlist a motorcycle gang to recover his money. Fearing for his safety, Brian began carrying a gun.

On December 11, 2018, Angle was agitated and upset about the dispute. He told a friend that he knew where Brian was and stated, "I'm going to handle this right now." Angle retrieved a duffel bag containing a long gun, and he and a female friend left in a Jeep. That night, Brian was

---

[1]    Undesignated statutory references are to the Penal Code.

inside an illegal gambling establishment when a security camera recorded Angle puncturing the tires on Brian's car. Brian went outside to confront Angle.

Once outside, Brian drew his gun and confronted Angle, who was holding a knife. Angle's friend then pulled up in the Jeep. Angle opened the door, retrieved a 12-gauge shotgun, and aimed it at Brian. Brian had lowered his gun and taken a few steps backward when Angle shot him. Angle fired from approximately five feet away, causing a large gunshot wound to Brian's right arm. When Brian fell to the ground, a man ran over, took Brian's gun, and got into the Jeep, which then drove away. Brian later died from hemorrhagic shock.

At trial, Angle admitted he shot Brian but claimed he did not intend to kill him. He asserted he aimed at Brian's gun, fearing Brian was about to shoot him first. Angle further claimed Brian fired his pistol twice before Angle discharged the shotgun. Police, however, recovered no spent cartridges at the scene other than the 12-gauge slug fired by Angle. In addition, two witnesses testified that they heard only a single gunshot.

DISCUSSION

I.

*No Error in Failing to Instruct on Involuntary Manslaughter*

The trial court instructed the jury on murder, first and second degree murder, voluntary manslaughter as a lesser included offense, and imperfect self-defense. The court did not instruct on involuntary manslaughter as a lesser included offense and Angle did not request such an instruction. Angle contends the trial court prejudicially erred by failing to sua sponte instruct on involuntary manslaughter because substantial evidence existed from which

3

the jury could have concluded that he lacked the intent to kill.  We are not persuaded.

"Voluntary and involuntary manslaughter are lesser included offenses of murder."  (*People v. Thomas* (2012) 53 Cal.4th 771, 813 (*Thomas*).)  A homicide carried out with malice is reduced to voluntary manslaughter when it is perpetrated either in the heat of passion or in the honest yet unreasonable belief that deadly force was required for self-defense.  (*People v. Brothers* (2015) 236 Cal.App.4th 24, 30 (*Brothers*).)  By contrast, involuntary manslaughter is an unlawful homicide committed without malice while engaging in an unlawful act not rising to the level of a felony, or during the performance of a lawful act that could result in death but is carried out in an unlawful manner or without due caution and circumspection.  (§ 192, subd. (b); *People v. Rangel* (2016) 62 Cal.4th 1192, 1227.)

The mental state required for involuntary manslaughter is criminal negligence.  (*People v. Mohamed* (2016) 247 Cal.App.4th 152, 161.)  Criminal negligence consists of conduct that represents such a deviation from the behavior of an ordinarily prudent person under similar circumstances that it demonstrates an indifference to human life.  (*Ibid.*)  Under this standard, awareness of risk is assessed objectively—if a reasonable person in the defendant's position would have recognized the danger, the law presumes the defendant did as well.  (*Ibid.*)  "Malice is implied when an unlawful killing results from a willful act, the natural and probable consequences of which are dangerous to human life, performed with conscious disregard for that danger."  (*People v. Elmore* (2014) 59 Cal.4th 121, 133.)

A trial court must instruct on lesser included offenses whenever the evidence is sufficient to create a genuine issue as to the existence of one or more elements of the charged crime.  (*People v. Lewis* (2001) 25 Cal.4th 610,

4

645.) This duty arises sua sponte and does not depend on a defense request. (*Ibid.*) Substantial evidence is evidence that a reasonable jury could find persuasive. (*Ibid.*) The "substantial evidence requirement is not satisfied by ' "*any* evidence . . . no matter how weak," ' but rather by evidence from which a jury composed of reasonable persons could conclude 'that the lesser offense, but not the greater, was committed.' " (*People v. Avila* (2009) 46 Cal.4th 680, 705.) We independently review an alleged failure to instruct on a lesser included offense, considering the evidence in the light most favorable to the defendant. (*Brothers, supra*, 236 Cal.App.4th at p. 30.)

Here, Angle intentionally fired a 12-gauge shotgun at Brian from about five feet away, claiming to be aiming for the gun in Brian's hand to disarm him. He did not intend to kill Brian, explaining he fired "one shot" and "was shooting at [Brian's] gun as best I could with [a shotgun]." However, an involuntary manslaughter instruction is required only when substantial evidence supports a finding that the defendant acted without malice—that is, without both a conscious disregard for human life and an intent to kill. (*People v. Vasquez* (2018) 30 Cal.App.5th 786, 794.)

Assuming the truth of Angle's testimony that he did not intend to kill Brian; the natural and probable consequences of his actions were inherently dangerous to human life. As a matter of law, this conduct satisfied the objective component of implied malice. (*Brothers, supra*, 236 Cal.App.4th at p. 35.) A lack of malice is a prerequisite for an involuntary manslaughter verdict. (§ 192, subd. (b).) No rational trier of fact could conclude that Angle was unaware of the lethal danger posed by firing a 12-gauge shotgun at another person from close range. Because the evidence supported the jury's finding that Angle acted with malice, the trial court had no duty to instruct, sua sponte, on involuntary manslaughter.

Even if we assume the evidence was sufficient to require an instruction on involuntary manslaughter, any error in failing to give that instruction was harmless. Failing to instruct on a lesser included offense in a noncapital case generally does not require reversal unless the entire record " 'establishes a reasonable probability that the error affected the outcome.' " (*Thomas, supra*, 53 Cal.4th at p. 814.) No such reasonable probability exists when the jury's findings under other correct instructions necessarily resolved the factual question implicated by the missing instruction adversely to the defendant. (*People v. Beames* (2007) 40 Cal.4th 907, 928 (*Beames*).)

Here, the trial court instructed the jury that a conviction for first degree murder requires a determination "the People have proved that [the defendant] acted willfully, deliberately, and with premeditation. The defendant acted *willfully* if he intended to kill. The defendant acted *deliberately* if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with *premeditation* if he decided to kill before completing the acts that caused death." (CALCRIM No. 521.) By finding Angle guilty of first degree murder, the jury necessarily found he intended to kill Brian. "[I]n finding the killing was intentional, the jury necessarily found express, not implied, malice." (*Beames, supra*, 40 Cal.4th at p. 928.) Accordingly, any assumed instructional error was harmless, because it is not reasonably probable that the jury—having expressly found intent to kill—would have reached a different verdict had it been instructed on involuntary manslaughter.

## II.

### *No Abuse of Discretion in Denying Pitchess Motion*

Law enforcement personnel records are presumptively confidential (§ 832.7); however, under some circumstances, the privacy interests supporting confidentiality conflict with a criminal defendant's equally compelling due process interest in obtaining evidence necessary to his defense. (*Fletcher v. Superior Court* (2002) 100 Cal.App.4th 386, 400.) To obtain discovery of these records, a defendant must file a written motion accompanied by an affidavit showing good cause for the discovery, explaining the materiality of the requested documents and stating "upon reasonable belief" that the governmental agency has them. (Evid. Code, § 1043, subds. (a), (b)(3).)

"A showing of 'good cause' requires defendant to demonstrate the relevance of the requested information by providing a 'specific factual scenario' which establishes a 'plausible factual foundation' for the allegations of officer misconduct committed in connection with defendant." (*Cal. Highway Patrol v. Superior Court* (2000) 84 Cal.App.4th 1010, 1020.) The allegations may be based on information and belief rather than personal knowledge; however, they must be stated with adequate specificity to preclude the possibility that the defendant is merely engaging in a fishing expedition. (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 85; *People v. Mooc* (2001) 26 Cal.4th 1216, 1226.) We review a trial court's *Pitchess* ruling under an abuse of discretion standard. (*Mooc*, at p. 1228.)

Angle asks us to independently review the materials the trial court reviewed during the in camera hearing to determine if additional material

should have been provided to his trial counsel. The People agree that such review is appropriate.

On appeal, we are required to review the record of the documents examined by the trial court and determine whether the trial court abused its discretion by refusing to disclose the contents of the officer's personnel records pursuant to *Pitchess*.[2] (*People v. Hughes* (2002) 27 Cal.4th 287, 330.) "A witness may be impeached with any prior conduct involving moral turpitude whether or not it resulted in a felony conviction, subject to the trial court's exercise of discretion under Evidence Code section 352." (*People v. Clark* (2011) 52 Cal.4th 856, 931.) The admissibility of prior misconduct for impeachment purposes is initially limited by the requirement that the conduct involves moral turpitude. (*People v. Wheeler* (1992) 4 Cal.4th 284, 296.) Even then, Evidence Code section 352 grants courts broad discretion to exclude such evidence in a particular case. (*Ibid.*)

The transcript of the trial court's confidential in camera hearing and the confidential materials reviewed by the court have been transmitted to this court under seal. We have reviewed the entirety of the record under seal and independently conclude the trial court did not abuse its discretion when it denied Angle's *Pitchess* motion.

_____

[2]     On our own motion, we augmented the record with the confidential documents reviewed at the April 30, 2024 in camera hearing.

## DISPOSITION

The judgment is affirmed.

DO, J.

WE CONCUR:

McCONNELL, P. J.

CASTILLO, J.