Filed 4/29/13  P. v. Zapata CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RUBEN ZAPATA et al.,<br><br>    Defendants and Appellants. | 2d Crim. No. B238306<br>(Super. Ct. No. BA373635)<br>(Los Angeles County) |

Ruben Zapata and Miguel Vivas appeal a judgment after conviction by jury of one count each of assault with a semiautomatic weapon.  (Pen. Code, § 245, subd. (b).)[1]  The jury found true allegations that Zapata and Vivas committed the assault on behalf of a criminal street gang.  (§ 186.22, subd. (b)(1)(B).)  It also found true allegations that Zapata (the principal) was armed with, and personally used, a firearm. (§§ 12022, subd. (a)(1), 12022.5, subds. (a) & (d).)

Zapata and Vivas contend the trial court abused its discretion when it allowed evidence that, three months after the assault, Zapata and Vivas committed a robbery with a gang member.  They also contend that there was insufficient evidence to support the jury's finding on the gang allegation.  Vivas requests review of any file produced in the trial court pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d. 531.

---

[1] All statutory references are to the Penal Code.

We review the sealed transcript of the *Pitchess* hearing and determine no information was improperly withheld. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Dogtown is a criminal street gang. Its territory includes the Willliam Mead Housing Development in Los Angeles (the housing project). Vivas lived in the housing project; Zapata grew up there.

One evening in July 2010, Los Angeles Deputy Sheriff Adrian Rendon drove an unmarked car near the housing project, along the boundary of Dogtown territory. He made eye contact with the driver of an oncoming car, Vivas.

Vivas made a U-turn and pulled along aside Rendon so that his passenger, Zapata, was within two feet of Rendon. Zapata pointed a handgun at Rendon, and then said, "Oh fuck. He's a cop." Vivas drove away. Deputy Rendon is Hispanic. His hair was cut very short. He was wearing a uniform.

Rendon followed the car. It turned into the housing projects and Rendon called for assistance.

Deputies found the parked car in the project, still warm to the touch. It belonged to Zapata. A helicopter search light illuminated Zapata and Vivas who were standing by an abandoned sofa in the project. Zapata put something under the sofa before they ran. They were caught. Each denied involvement in the assault. A deputy found a small loaded handgun beneath the sofa.

In a recorded telephone call from jail, Vivas told his sister to retrieve guns from his room and to give them to "Reaper or somebody." Zapata's brother is a Dogtown member whose moniker is "Reaper."

Over defense objection, the trial court admitted evidence that Zapata and Vivas were involved in a robbery after the assault. The trial court conducted a section 352 hearing before admitting the evidence. It found the subsequent robbery to be highly relevant to the "association" element of the gang allegation. A Los Angeles police officer testified that, about three months after the charged assault, Zapata and Vivas "robbed" a case of beer from a liquor store with Reaper. The court instructed the jury to consider the

2

robbery only "as it related to the gang allegation," on the issue of "whether the defendants were associating together or acting for the benefit of the gang."

A Los Angeles Police Officer, Adrian Lopez, testified that Zapata is an admitted member of the Dogtown gang. Lopez believed Vivas to be an associate or affiliate of Dogtown. He had prior contacts with Vivas in the company of other Dogtown members including Vivas's brother, Genaro. Vivas's other brother was the victim of a gang related killing.

Another Los Angeles Police Officer, Tyler Fox, testified about the criminal activity of the Dogtown gang. He knew Zapata to be an admitted member. He believed Vivas was a Dogtown associate based on Vivas's association with Zapata during the assault, the subsequent robbery, and the telephone call from the jail. Fox had seen Vivas in the housing project in 2009 and 2010 but had not seen him with other gang members. He knew one of his brothers was a gang member.

Zapata testified. He denied any involvement in the Dogtown gang and said his tattoos were only a tribute to his upbringing in the housing project. He denied any involvement in the assault. He said he had lent his car to an acquaintance that evening. He described a history of mistreatment by Officer Lopez.

Before trial, Vivas moved for disclosure of Rendon's personnel records concerning dishonesty or threatening or interfering with witnesses. (*Pitchess v. Superior Court, supra*, 11 Cal.3d 531.) The trial court conducted an in camera hearing and found no discoverable information.

## DISCUSSION

### *Evidence of the Subsequent Robbery*

Zapata and Vivas contend the trial court abused its discretion when it admitted evidence of the robbery because the robbery was not gang related. We disagree.

We review for abuse of discretion a trial court's decision to admit evidence of an uncharged offense pursuant to section 352. (*People v. Kipp* (1998) 18 Cal.4th 349, 369.) The evidence was relevant to prove association with a street gang and the trial

3

court did not abuse its discretion when it decided its probative value outweighed any risk of undue prejudice.

Zapata and Vivas argue the robbery was inadmissible to prove the gang enhancement because it was not itself gang related. (*In re Daniel C.* (2011) 195 Cal.App.4th 1350, 1364 [stealing a bottle of liquor to drink with companions was not alone sufficient to support a gang allegation].) But whether or not the robbery alone would support a gang allegation is not dispositive. It has a tendency in reason to prove association. That Zapata and Vivas committed a crime with another gang member shortly after they committed this offense had a tendency in reason to prove that they associated with members of the Dogtown gang. They correctly point out that association alone is not a crime. But association is one of two elements necessary to prove a gang allegation. That element required proof that Zapatas and Vivas assaulted the deputy "for the benefit of, at the direction of, or in association with" the Dogtown gang. (§ 186.22, subd. (b)(1).) The trial court did not abuse its discretion when it admitted evidence of the subsequent robbery to prove association.

*Criminal Street Gang Allegation*

Zapata and Vivas challenge the sufficiency of the evidence to support the jury's finding that the criminal street gang allegations were true. We review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence from which a reasonable trier of fact could find beyond a reasonable doubt that the assault was committed (1) "for the benefit of, at the direction of, or in association with" the Dogtown gang, and (2) "with the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1); *People v. Livingston* (2012) 53 Cal.4th 1145, 1170.) Substantial evidence is evidence that is reasonable, credible, and of solid value. (*Livingston,* at p. 1170.) We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. (*Ibid.*) We do not reweigh the evidence or reassess credibility. (*Ibid.*) Reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. (*Ibid.*)

4

It is undisputed that Dogtown is a criminal street gang. Two officers testified that Zapata was a known member. A reasonable jury could disbelieve his testimony to the contrary. There was no evidence that Vivas had previously been involved in the gang, but his association with Zapata during the assault, his telephone call from jail arranging to have guns moved to a known gang member, and his involvement in a subsequent robbery with two gang members were sufficient to support an inference that he was associated with the Dogtown gang.

A reasonable jury could have concluded from the circumstances of this crime that Zapata and Vivas committed the assault with the specific intent to benefit the Dogtown gang. Not every crime committed by gang members is gang related (*People v. Livingston, supra,* 53 Cal.4th at p. 1170), but the evidence supported an inference that Zapata and Vivas acted with intent to protect Dogtown's dominance within its territory. They encountered an unfamiliar young Hispanic man in a car at the boundary of the Dogtown territory. When they made eye contact, Vivas turned his car around and pulled his car up to the man's car so Zapata could confront him with a gun. A reasonable jury could infer that Zapata and Vivas acted with the intent to enforce and defend gang territory, for the benefit of the Dogtown gang.

Vivas argues that the evidence of his gang membership was weak. But the evidence that he was associating with and assisting a known gang member was strong. Association is sufficient to establish the first element of the allegation. (§ 186.22, subd. (b)(1).) And Vivas maneuvered his car to help a known gang member point a gun at the deputy. "[I]f substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members." (*People v. Albillar* (2010) 51 Cal.4th 47, 68.)

*Independent Review of the Pitchess Hearing*

Vivas requested independent review of the trial court's in camera hearing on his *Pitchess* motion to determine whether any records were improperly withheld. We conducted an independent review of the in camera hearing pursuant to *People v. Mooc*

5

(2001) 26 Cal.4th 1216, 1229-1232.  We conclude the trial court did not abuse its discretion when it determined that there were no discoverable records.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.


We concur:



YEGAN, J.



PERREN, J.

6

Stephen A. Marcus, Judge

Superior Court County of Los Angeles

_____

Jonathan P. Milberg, under appointment by the Court of Appeal, for Defendant and Appellant Ruben Zapata.

Murray A. Rosenberg, under appointment by the Court of Appeal, for Defendant and Appellant Miguel Vivas.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Eric E. Reynolds, Ana R. Duarte, Deputy Attorneys General, for Plaintiff and Respondent.