Filed 7/27/15  P. v Braden CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CEDRIC ANTHONY BRADEN,<br><br>    Defendant and Appellant. | B247637<br><br>(Los Angeles County<br>Super. Ct. No. BA388617) |

_____

APPEAL from a judgment of the Superior Court of Los Angeles County.  Gail Ruderman Feuer, John S. Fisher and Patricia M. Schnegg, Judges.  Reversed with directions.

Tanya Dellaca, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell, Supervising Deputy Attorney General, and Eric E. Reynolds, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant Cedric Anthony Braden appeals from the judgment entered following a jury trial in which he was convicted of possessing cocaine base for the purpose of sale. Defendant contends the trial court erred by delaying disclosure to defense counsel and failing to conduct an evidentiary hearing when the court learned that one or more jurors feared a man who had accompanied defendant to court. Defendant further contends the trial court erred by denying his motion for disclosure of jurors' identifying information, denying a motion to continue the trial date, and partially denying his motion for discovery of police officer personnel records. He also asks this court to review the police officer personnel records pertaining to other officers that the trial court reviewed in camera to determine whether additional records should have been disclosed to the defense.

We agree that the trial court erred by denying defendant's motion to continue the trial date but are unable to determine whether the error was prejudicial. We also conclude the trial court erred by denying defendant's discovery motion with respect to one police officer. Accordingly, we conditionally reverse the judgment with directions for further proceedings to address these errors upon remand.

## BACKGROUND

On September 6, 2011, a team of about 12 Los Angeles Police Department (LAPD) vice officers were out on the streets in the vicinity of Figueroa and 84th Street in Los Angeles. Officer Juan Barillas was part of the team, working in an undercover capacity. He testified at trial that he observed—from a distance of about 15 feet—a man hand defendant some money, and defendant hand the man an object that resembled rock cocaine. The man walked past Barillas, who testified he saw an "off-white, rock-like substance that resembled rock cocaine" in the man's open palm. Defendant entered a van parked about 25 to 30 feet away on the opposite side of the street, did something, then got out and walked away as Barillas informed other members of his team of his observations.

Officers Angela Tumbeiro and Nicholas Hartman both testified at trial. They approached defendant in a marked police car and called out to him. Defendant began

2

backing away from their car. As they got out of their car, defendant dropped two things from his hand and ran. Hartman chased and caught defendant.

The van was registered to defendant. Officer Leslie Salinas testified at trial that she searched it and recovered a cutting board with what appeared to be rock cocaine residue on it, a razor blade, plastic sandwich bags, two cell phones, $123 in cash, and marijuana. On the grass next to the van she found two pieces of rock cocaine. In the area where Tumbeiro saw defendant drop something, Salinas recovered two separately wrapped rocks of cocaine.

Barillas opined defendant possessed the cocaine to sell it. He based his opinion on the sale he observed, the items in defendant's van, and the absence of smoking paraphernalia in defendant's possession.

Gabriella L., whose father was defendant's friend, testified that she "heard a commotion outside" her house around 6:00 or 6:30 p.m. on September 6, 2011. She looked out a window to see what was going on and saw numerous police officers and a blue van parked in front of her house. She continued watching out her window until the officers took defendant away. Some of the officers appeared to be searching for something on the ground but did not pick anything up off the ground. Officers were also around the van and may or may not have gone into it, but they did not come out of it holding anything or put anything into bags or envelopes.

The jury convicted defendant of possessing cocaine base for the purpose of sale. The court found defendant had suffered two prior serious or violent felony convictions within the scope of the "Three Strikes" law, but the prosecutor elected to seek only second-strike sentencing. The court further found true a Penal Code section 667.5, subdivision (b)(1)[1] prior prison term allegation and sentenced defendant to nine years in prison, consisting of a second-strike term of eight years for the offense and one year for the prior prison term enhancement.

---

[1] Undesignated statutory references pertain to the Penal Code.

3

## DISCUSSION

### 1.  Discovery that some jurors feared defendant's companion

#### a.  Proceedings in the trial court

After a jury had been selected and excused for the day on September 10, 2012,[2] the court noted on the record that a courtroom spectator had been making noises and statements expressing his displeasure with the court's rulings.  The court told the person that he had to remain silent while in the courtroom.

At the end of the day on September 11, the court again addressed the spectator outside the presence of the jury.  The spectator introduced himself as David Jackson and said he was defendant's friend and had been assisting defendant and defense counsel in the case.  The court remarked that Jackson had been disrespectful as he left the courtroom the previous day.  The court noted that although Jackson had been quiet in the courtroom, the bailiff had told her that Jackson had been cursing at defense counsel in the hallway outside the courtroom.  The bailiff stated on the record that Jackson had stated to him and another deputy that he was "'going to talk shit to the jury.'"  Jackson denied cursing at defense counsel and explained that, because he had been sitting quietly in the courtroom, he had expressed his displeasure with court personnel who told him he might be banned by saying he might as well have been disruptive.  He stated, however, that he would not actually speak to the jury because he did not want to harm defendant's case.

The court told Jackson that because it had "an obligation to protect the security of the jurors, the security of counsel, the security of everyone in the courtroom," and was concerned about Jackson's threat to speak to jurors, it was barring Jackson from the courtroom and the 11th floor of the courthouse for the remainder of the trial.  Jackson failed to obey the court's order to leave the courtroom and continued speaking until bailiffs removed him.

The jury reached its verdict three days later and was discharged.

---

[2]  Undesignated date references pertain to 2012.

4

Jackson returned to the courtroom on October 12, the date set for defendant's court trial on prior conviction and prison term allegations and sentencing. In the presence of counsel but not defendant, the court told Jackson that he was still barred from the courtroom. Jackson explained that he thought he could attend because the jury had been discharged. He assured the court that he had not actually spoken to any jurors and argued it was error to bar him. After Jackson argued with the court, the court characterized his conduct as disrespectful and stated, "I ordered that you were banned from the courtroom because you were interfering with the jury, and I had jurors who came and talked to our bailiff and said that they were scared of you and that they wanted to be escorted out of the building so they couldn't come in contact with you. That's how scared they were of you because of comments you had made to them and things you had done." Jackson denied he had ever spoken to the jury. The court banned him from attending any further proceedings in defendant's case.

After defendant arrived, proceedings in his case resumed, and defense counsel asked to continue sentencing and the hearing on the motion for a new trial on the ground the court's statement about jurors being afraid of Jackson might constitute an additional ground for that motion. The court responded, "I would note in the hearing about Mr. Jackson, what I indicated is that one or more jurors had told the bailiff they had a concern about Mr. Jackson. They didn't know him by name, just an individual who was making comments in the hallway. I would note there's no reason for the jury to believe that Mr. Jackson was in some—was connected with Mr. Braden. That was never brought to their attention." The court nevertheless granted a continuance of the sentencing hearing to give defendant time to file his motions.

Defense counsel filed a motion for disclosure of jurors' identifying information. Counsel's declaration in support of the motion stated she had observed Jackson and defendant "speaking to one another in a place visible to the jurors," and believed it was "probable that the Jurors observed [defendant] and Mr. Jackson together during the trial." The motion argued the verdict may have been influenced by jurors' fear of Jackson. On

5

October 25, 2012, before the court ruled on the motion, it granted defendant's motion to represent himself. Defendant subsequently filed two identical petitions to obtain access to jurors' identifying information and an amended version of his petition. The "Statement of Facts" section of defendant's hand-printed petition stated that after the verdict was taken and the jury discharged, defense counsel spoke with jurors in the hallway "and asked if they had deliberated free of threat or intimidation, at which time they denied any such pressures." Defendant's declaration attached to his amended petition stated that on several occasions jurors had observed him "being consoled" and "guided" by Jackson.

Defendant also filed a motion for a new trial in which he argued, inter alia, that the court's October 12 statement to Jackson about jurors fearing him revealed the court had engaged in an improper ex parte communication with the jury regarding Jackson.

On January 10, 2013, the court denied defendant's motion and petition to obtain jurors' identifying information. The court stated nothing indicated Jackson actually had any contact with jurors and explained: "The court had a concern because, when the jury had reached their verdict, they requested to be escorted out of the courtroom because they did have a fear of Mr. Jackson. That is something that I learned through the bailiff, who was told this by a member of the jury. Again, though, that information does not tell me that there was anything improper in the jury room in terms of their deliberations, only that they saw an individual in the audience who made them nervous and they wanted to be escorted to the car. [¶] I would note that happens in many cases. I have gang cases where families of gang members who are on trial sit in the audience. I don't think anything improper happens in the jury room, but the jury requests security to go to their car." The court also cited defendant's representation that the jurors told defense counsel they deliberated free of threats and intimidation.

On March 12, 2013, in ruling upon defendant's motion for a new trial, the court denied it had engaged in any improper ex parte communication with the jury. The court reiterated that there was no evidence that Jackson ever spoke with any jurors. It explained that when addressing Jackson on October 12, it had stated "at that time that the

6

jury had a concern for their safety. I believed at the time, although I believe—well, but Mr. Jackson said it was not true—that the concern might have been related to the fact he did, in fact, talk to them. I did not know whether he did or he did not. That statement was not based on any communication by a juror either to myself or the bailiff. At no time did any juror say to myself or to the bailiff that, in fact, Mr. Jackson had spoken to them. Rather, the comment apparently was made after the verdict was rendered to the bailiff that the juror—one or more jurors had a concern for their safety and requested an escort. That was not put on the record. That is not the type of statement that normally would be put on the record. It also was made after the verdict was rendered." The court also stated, "I'll note there was no evidence that any juror during deliberations was in any way influenced by the fact that they had negative views or any fear of Mr. Jackson, and that in any way impacted their decision in the case."

After listening to defendant's argument that the verdict could have been affected by jurors' "disdain" for Jackson, the court stated: "The problem is there's no evidence of that. It is fairly common that we have bailiffs escort jurors out of the courtroom. Often it's because the family of the defendant is in the courtroom. Your attorney in her declaration said that she assumed the jury saw you and Mr. Jackson together at some point in the cafeteria or wherever. So I think you are correct that they may have seen you together, but there is no evidence at all before me that there was any influence on the jury from any feeling of security concerns with respect to Mr. Jackson, that they were using that improperly in the jury room with respect to the verdict. This court cannot speculate on that." The court explained: "You need to bring me evidence of actual misconduct by the jury that they did something in response to what Mr. Jackson did. By Mr. Jackson's own statements he never talked to the jury. That doesn't mean he gave them a scary look or he did something that made them concerned or—frankly, they just found the defendant guilty, and a friend of the defendant was in the audience. They don't want to walk past that friend before they go back to their cars, but for under the case law, there needs to be

7

some evidence presented to the court of misconduct and not speculation that the jury did something improper."

Defendant contends that the trial court erred by (1) waiting until after the verdict to inform defense counsel that jurors feared Jackson and (2) failing to conduct a hearing to inquire whether the jurors' fear of Jackson resulted in bias against defendant. He argues these alleged errors violated his rights to due process, an impartial jury, and the effective assistance of counsel.

**b.      The trial court did not err**

Both of defendant's contentions rest upon an unsupported premise: that the trial court had been informed that one or more jurors feared Jackson before the jury rendered its verdict and was discharged. Even viewed most favorably to defendant, the record reflects only that after the jury rendered its verdict and was discharged, one or more jurors asked for an escort to his or her car due to some fear related to Jackson.

In arguing that the trial court erred by failing to hold a hearing, defendant relies upon authorities regarding the trial court's duty when, *before a verdict is rendered and the jury discharged*, the court is put on notice that a juror may have engaged in misconduct or been subjected to improper influences. For example, section 1089 provides for the discharge of a sitting juror and substitution of an alternate where the trial court has good cause to conclude that a juror is unable to perform his or her duty. Similarly, numerous cases provide that when a trial court is on notice that good cause to discharge a juror may exist, it must "'"'make whatever inquiry is reasonably necessary' to determine whether the juror should be discharged."'" (*People v. Martinez* (2010) 47 Cal.4th 911, 941.) After a verdict is rendered and the jury has been discharged, replacement of one or more jurors with alternates is impossible, and no purpose would be served by requiring the court to make such an inquiry. For example, in *People v. Burgener* (1986) 41 Cal.3d 505, 518–520, disapproved on another ground in *People v. Reyes* (1998) 19 Cal.4th 743, 756, upon which defendant relies in arguing the trial court had a sua sponte duty to inquire about juror misconduct or improper influence, the issue

8

of juror misconduct materialized during trial, when an inquiry and discharge of a juror and substitution of an alternate would have been both a feasible and reasonable approach.

In contrast, postconviction discovery of possible juror misconduct or improper influence is properly raised by means of a motion for a new trial, and, where necessary, a motion to obtain jurors' identifying information to attempt to obtain evidentiary support for a new trial motion. (See, e.g., *People v. Leonard* (2007) 40 Cal.4th 1370, 1410 [new trial motion based upon a juror's misconduct discovered after trial].) In the postverdict posture, "it is within the discretion of a trial court to conduct an evidentiary hearing to determine the truth or falsity of allegations of jury misconduct, and to permit the parties to call jurors to testify at such a hearing. This does not mean, however, that a trial court must hold an evidentiary hearing in every instance of alleged jury misconduct. The hearing should not be used as a 'fishing expedition' to search for possible misconduct, but should be held only when the defense has come forward with evidence demonstrating a strong possibility that prejudicial misconduct has occurred. Even upon such a showing, an evidentiary hearing will generally be unnecessary unless the parties' evidence presents a material conflict that can only be resolved at such a hearing." (*People v. Hedgecock* (1990) 51 Cal.3d 395, 419, fn. omitted.)

In this case, defendant filed both a motion for a new trial and a motion to obtain jurors' identifying information. Although defendant challenges denial of the latter on appeal (as addressed in the next section of this opinion), he does not contend the trial court improperly denied his motion for a new trial.

Defendant's contention that the court erred by waiting until after the verdict to inform defense counsel of jurors' fears of Jackson also lacks merit because, as far as the record reveals, the trial court first learned of jurors' fear after the jury had rendered its verdict and been discharged. The trial court cannot be faulted for failing to disclose any information before it actually acquired it. With respect to the roughly one-month delay between the time a juror expressed fear and the court's "disclosure" of this while addressing Jackson in the presence of defense counsel, defendant has not even attempted

9

to show any prejudice. Defendant was then given ample time to file his motions for disclosure of jurors' identifying information and new trial after "disclosure," and the record does not suggest any other form of potential prejudice, e.g., loss of evidence.

Accordingly, defendant's contentions regarding the trial court's handling of the matter of one or more jurors' fear lack merit.

**2. Denial of motion to obtain jurors' identifying information**

Defendant contends the trial court erred by denying his motion to obtain jurors' identifying information and that this violated his rights to a fair trial and impartial jury. As previously set forth, the court denied defendant's motion because it concluded nothing indicated Jackson actually had any contact with jurors, defendant's motion had represented that the jurors told defense counsel they deliberated free of threats and intimidation, and, in the court's experience, it was not unusual for jurors to request an escort after rendering a guilty verdict.

**a. Disclosure of jurors' identities and contact information**

When a verdict in a criminal case is recorded, jurors' identifying and contact information is sealed. (Code Civ. Proc., § 237, subd. (a)(2)–(3).) A defendant may petition the court for access to these records, but must show good cause for disclosure: "The petition shall be supported by a declaration that includes facts sufficient to establish good cause for the release of the juror's personal identifying information. The court shall set the matter for hearing if the petition and supporting declaration establish a prima facie showing of good cause for the release of the personal juror identifying information, but shall not set the matter for hearing if there is a showing on the record of facts that establish a compelling interest against disclosure." (*Id.*, subd. (b).) Good cause requires showing facts sufficient to support a reasonable belief that jury misconduct occurred, diligent efforts to contact jurors through other means, and the necessity of further investigation to provide the court with adequate information to rule on a motion for a new trial. (*People v. Carrasco* (2008) 163 Cal.App.4th 978, 990 (*Carrasco*).)

10

We review the trial court's ruling on the petition for disclosure for abuse of discretion. (*Carrasco*, *supra*, 163 Cal.App.4th at p. 991.)

**b.     The trial court did not abuse its discretion by denying defendant's motion**

Defendant's motion did not establish good cause for disclosure because it did not establish facts sufficient to support a reasonable belief that jury misconduct or improper influence upon jurors occurred. It was based instead upon speculation that the juror or jurors who requested an escort after rendering their verdict had been adversely influenced by Jackson against defendant in reaching their verdict. The motion itself undermined this speculative inference by revealing that jurors told defense counsel they deliberated free of threats and intimidation. Although defendant attempts to downplay the significance of this statement by arguing it was not in a declaration, it was nonetheless part of the "statement of facts" he presented to the court in support of his motion. It is difficult to believe defendant, who was representing himself at the time, included that statement inadvertently or that he would have included that statement in his hand-printed motion if it had not been conveyed to him by trial counsel.

Even assuming, for the sake of argument, that the juror or jurors who requested an escort had been intimidated by Jackson, this would not be sufficient to support a reasonable belief that jury misconduct occurred and that their verdict had been influenced by Jackson. They may have deliberated and reached their verdict without improper influence, but simply have wanted to avoid a confrontation with Jackson or defendant himself. Moreover, the record reflects that in the presence of the jury Jackson made noises and audible comments about the court's rulings during jury selection. Despite seeing Jackson's behavior in the presence of the jury, defendant and his counsel expressed no concern at that time that such behavior could improperly influence jurors. This supports the trial court's implied finding that such misconduct was not of a character that would probably prejudice defendant or influence the verdict. (*People v. Lucero* (1988) 44 Cal.3d 1006, 1022 ["Misconduct on the part of a spectator is a ground for

11

mistrial if the misconduct is of such a character as to prejudice the defendant or influence the verdict. [Citations.] A trial court is afforded broad discretion in determining whether the conduct of a spectator is prejudicial."].)

On this record, defendant's request for jurors' identifying information was a "fishing expedition." The trial court did not abuse its discretion by denying his motion.

**3.     Partial denial of *Pitchess* motion**

**a.     Proceedings in the trial court**

Defendant filed a motion for discovery of personnel records of LAPD Officers Barillas, Bell, Padilla, Tumbeiro, Hartman, Salinas, Manlove, and Willers pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*). The motion sought records pertaining to bias, dishonesty, fabrication of evidence or police reports, perjury, lying in police reports or to cover up misconduct, excessive force, false or misleading internal reports, and disciplinary actions and investigations. The theory set forth in defense counsel's supporting declaration was that defendant possessed marijuana, but no rock cocaine; defendant did not engage in a sale of a controlled substance; officers swarmed upon him while he was visiting friends and immediately grabbed him by the throat and repeatedly kicked and punched him; officers fabricated observing defendant making a sale and discarding off-white solids; officers fabricated defendant's resisting them; officers failed to report their own excessive use of force; and officers searched defendant's van without probable cause.

Counsel's declaration in support of the *Pitchess* motion identified Barillas, Tumbeiro, Hartman, Bell, and Padilla as involved in detaining defendant, and Salinas as the officer who searched defendant's van and recovered rock cocaine from the van and from the area in which Tumbeiro and Hartman claimed they saw defendant discard objects. The declaration did not mention Officers Manlove and Willers. Police reports and photographs were attached as exhibits to the motion.

Judge John Fisher granted the motion with respect to Officers Barillas, Bell, Padilla, Tumbeiro, and Hartman and with respect to fabricating or planting evidence and

12

the use of excessive force, but denied it with respect to other officers and types of conduct.

Defendant contends the trial court erred by denying the motion with respect to Salinas, Manlove, and Willers.

### b. Discovery of police officer personnel records

To obtain discovery of a police officer's personnel records and complaints against such officers, a defendant or petitioner must file a motion describing the type of records sought and showing, inter alia, the materiality of the information to the subject of the pending action and good cause for disclosure. (Evid. Code, §§ 1043, 1045.) "To show good cause as required by [Evidence Code] section 1043, defense counsel's declaration in support of a *Pitchess* motion must propose a defense or defenses to the pending charges. The declaration must articulate how the discovery sought may lead to relevant evidence or may itself be admissible direct or impeachment evidence [citations] that would support those proposed defenses." (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1024 (*Warrick*).) "Counsel's affidavit must also describe a factual scenario supporting the claimed officer misconduct. That factual scenario, depending on the circumstances of the case, may consist of a denial of the facts asserted in the police report." (*Id.* at pp. 1024–1025.) "[T]he good cause requirement embodies a 'relatively low threshold' for discovery." (*People v. Samuels* (2005) 36 Cal.4th 96, 109.)

"The court then determines whether defendant's averments, '[v]iewed in conjunction with the police reports' and any other documents, suffice to 'establish a plausible factual foundation' for the alleged officer misconduct and to 'articulate a valid theory as to how the information sought might be admissible' at trial. [Citation.] Although a *Pitchess* motion is obviously strengthened by a witness account corroborating the occurrence of officer misconduct, such corroboration is not required. What the defendant must present is a specific factual scenario of officer misconduct that is plausible when read in light of the pertinent documents." (*Warrick*, *supra*, 35 Cal.4th at p. 1025.) "[A] plausible scenario of officer misconduct is one that might or could have

13

occurred. Such a scenario is plausible because it presents an assertion of specific police misconduct that is both internally consistent and supports the defense proposed to the charges." (*Id.* at p. 1026.)

**c.     The trial court erred by denying defendant's *Pitchess* motion with respect to one officer**

With respect to Officers Manlove and Willers, defendant did not show good cause for discovery. Neither defense counsel's declaration nor the police reports attached to defendant's *Pitchess* motion set forth any plausible scenario of officer misconduct by these two officers. Counsel's declaration states they were "assigned to vice wearing plain clothes." The police reports indicate these two officers were part of the team working the area at the time of defendant's arrest and that Willers strip-searched defendant at the time he was booked, but found no contraband. Nothing suggests either officer fabricated evidence against defendant or used force on him at any time.

With respect to Salinas, the propriety of the court's ruling is less clear. Counsel's declaration states that Salinas searched defendant's van, where she found money, a cutting board with "off white residue," a razor blade, packaging materials, "two off white rocks resembling crack cocaine," and marijuana. The declaration also states that Salinas "also recovered a rock resembling crack cocaine from the yard where [defendant] discarded a similar item." The police reports attached to the motion reflect the same acts by Salinas. Because Salinas was the officer who found and recovered the contraband defendant asserted he did not possess, the theory that Salinas either planted the contraband or falsely claimed to have found it in defendant's van and on the sidewalk fell squarely within the plausible factual scenario the trial court concluded defendant's motion had established. Indeed, if contraband were planted, Salinas was the officer most likely to have planted it. Accordingly, we conclude the trial court erred by failing to grant the motion with respect to Salinas and thereby failing to conduct an in camera review of the officer's personnel file.

14

Defendant must show prejudice from the erroneous denial of discovery. (*People v. Gaines* (2009) 46 Cal.4th 172, 181.) Because neither we nor the parties know whether there was any discoverable material within Salinas's personnel file, much less what use defendant may have been able to make of any such material, the proper remedy is to remand for the trial court to conduct an in camera review of Salinas's personnel file for matters falling within the categories as to which the court should have granted the motion. (*Id.* at pp. 180–181; *People v. Hustead* (1999) 74 Cal.App.4th 410, 419, 423.) If the in camera review reveals no discoverable information in Salinas's personnel file that would lead to admissible evidence helpful to defendant's defense, defendant is not entitled to reversal of the judgment due to *Pitchess* error. If the in camera review reveals discoverable information that could lead to admissible evidence helpful to defendant's defense, the trial court shall grant the requested discovery, allow defendant an opportunity to demonstrate prejudice, and order a new trial if defendant succeeds in showing prejudice. (*Hustead*, at p. 419.)

As we will explain in part 5 of this opinion, conditional reversal and further proceedings upon remand also are required to address trial court error regarding defendant's motion for a continuance. Whether the judgment and sentence will be reinstated depends upon the combined outcome of all such proceedings.

4.     **In camera review of *Pitchess* materials**

Defendant requests that we review the record of the in camera proceedings to determine whether the trial court ordered disclosure of all responsive material relating to Officers Barillas, Bell, Padilla, Tumbeiro, and Hartman. We have done so and determine that the trial court made a proper record (*People v. Mooc* (2001) 26 Cal.4th 1216, 1229) and properly exercised its discretion (*People v. Jackson* (1996) 13 Cal.4th 1164, 1220–1221). It examined and described the nature of every complaint produced by the custodian and directed the disclosure of each one that fell within the grounds upon which the court had granted the motion.

**5.** **Denial of continuance**

Defendant contends the trial court erred by denying his motion, made on the eve of trial, for a continuance. As we will explain, the court erred and we conditionally reverse the judgment and remand for further proceedings.

**a.** **Proceedings in the trial court**

Defendant's *Pitchess* motion was granted, in part, on July 17, and Judge Fisher conducted an in camera review of the files produced by the custodian of records for the LAPD on July 20. The court found 17 complaints against four officers alleging the use of excessive force or "falsity issues" such as making false statements. The court ordered the custodian to provide defense counsel with the information regarding those complaints by July 31.

On July 24, the case was called for trial and defense counsel asked the court to continue the trial date to August 22 as day 0 of 20 so that she could obtain the *Pitchess* discovery from the LAPD, then find and interview the complainants and witnesses. Defendant objected that the trial court lacked jurisdiction and he wanted "to have this matter go before county counsel." The court found good cause and granted the continuance.

On September 6 (day 15 of 20), defense counsel moved to continue the trial to October 9 because she needed additional time for her investigators to locate and interview 12 people out of "approximately 30" identified in "*Pitchess* hits." Counsel noted that defendant opposed a continuance.

Judge Norman J. Shapiro addressed defendant at length: "The reason Miss Salzman wants to put this case over on your behalf is to investigate these various matters that have been brought to her attention through the *Pitchess* discovery process; okay? [¶] Now do you understand the officers who were involved in your case, they have personnel records. The judges—I guess it was Judge Fisher reviewed the personnel records, and he saw, according to Miss Salzman, 30 different instances where there's been claims of some type of misconduct by the police. [¶] Miss Salzman is going to investigate those or

16

is in the process of investigating those. So if the case does go to trial, she'll be able to use that information on your behalf. [¶] If I sent this to trial right now, which I'm happy to do if you are not willing to waive time, she's not going to have that information, and so you are going to be in somewhat of a disadvantage, not through any lack of skill or effort by your attorney, but you haven't given her enough time to have her investigators cover these areas. [¶] So that's what you should think about. [¶] Further, you are not in custody, and I understand, we have this type of situation occur with people in custody, and they want to get on with their case because they think they are going to be successful, and they don't want to wait any longer. [¶] But in your case, all you'd have to do is come back on October 9. A *Pitchess* investigation will be complete. Miss Salzman may sit down and talk to Miss Gruber or whoever is handling this case on behalf of the District Attorney and say, listen. Look at what we have here. Maybe you want to make a better offer with this gentleman or handle this case in a certain way. [¶] I don't know. But I'm suggesting that all that can happen, if you give your attorney the time."

Defendant nonetheless refused to waive time. The prosecutor noted that defense counsel had noticed a suppression motion for the next day and witnesses had been put on call for that motion. The prosecutor asked "to trail this till tomorrow, and then they can decide." The court agreed to do so and remarked, "[T]hat would give [defendant] an extra day to think about the situation." The court warned defendant, "I would be very careful about rushing into this, because your attorney won't be able to use perhaps some impeachment information regarding the witnesses against you." The court trailed the case until the next morning and advised defendant, "[T]hink about what I explained to you. [¶] Okay?"

A minute order reflects that after the parties left, Judge Shapiro "advance[d] and vacate[d] 9-7-12 court date in department 115. At the direction of the supervising judge of the criminal court[.]"

When the parties appeared before Judge Shapiro on September 7, defense counsel withdrew her suppression motion, but filed another motion to continue. Judge Shapiro

17

stated, "[W]e've cleared the matter with department 100, and they want the case there immediately. I filled out the transfer memo, but I did that after you folks left court yesterday." The court stated it would cross out its entry on the transfer memo that a suppression motion was pending and instead indicate that a motion for continuance was pending. After the court and counsel discussed the estimated duration of the trial, charges, enhancements, maximum potential sentence, and prior settlement offer, the court stated, "The matter will be transferred forthwith to department 100, so they are waiting for this at this time."

Defense counsel told the court defendant requested "15 minutes to have some time to think, possibly consult with family, and I believe he wishes to address the court." The court responded, "[H]e can still have 15 minutes. I'm going to send this case up. If for some reason he wants to accept the People's offer or perhaps counter and discuss the case, department 100 will send it right back here. I'll be here all day. So the matter is transferred to department 100." While the clerk prepared the file for transfer, defendant conferred with his attorney, who announced, "Your honor, [defendant] is stating that he will agree to a continuance at this time."

After a pause in the proceeding, the prosecutor informed the court, "I believe outside we have all of our officers ready to go on this trial. We[']re ready. We're asking to proceed with the trial on this case, your honor." The court told defense counsel it understood her situation with the outstanding *Pitchess* discovery and referred to defendant's prior unwillingness to waive time. The court then told defendant, "[W]hat you have caused is this: You have caused the district attorney to go into another gear to get ready on this case. They have all the witnesses here. They are ready to go. [¶] I was prepared to hear the [suppression motion] this morning, and that's probably why the witnesses are here. . . . [¶] What I'm going to do, I'm going to transfer the matter to department 100. If Judge Schnegg wants to grant you a continuance in this matter or send it back here with the request that I continue it, I'll be happy to do that. But at this point, I'm going to let the matter go to department 100."

18

In department 100, with Judge Patricia Schnegg presiding, defense counsel told the court she had filed motions for continuances that day and the day before, and explained that although defendant had been unwilling to waive time the day before, "[t]oday he says he will." After a discussion with counsel off the record, the court stated, "Judge Shapiro denied that motion and basically has sent you up for trial. And at the bench, [defense counsel] has renewed the motion. And at this point in time, since it was just denied this morning by Judge Shapiro, no changed facts, I'm also going to deem you ready and send you out for trial today."

Defense counsel informed the court that the previous day Judge Shapiro had urged defendant to use the night to reconsider his decision not to waive time and represented he would revisit the issue that morning; after reconsidering the issue overnight, defendant expressed a desire to waive time that morning. Counsel then explained, "Judge Shapiro did express, to my recollection this morning, that he was going to deny the [continuance motion], but that we were free to renew it in 100. And then he did repeatedly express to [defendant] that if we need to go back, he would be welcome to have us back. It might be that he was anticipating we would renew the [continuance motion] and his finding was not necessarily binding. He had anticipated that 100 would consider it anew." Judge Schnegg stated she lacked authority to do so and explained, "Equal jurisdiction, I can't overrule him." The court transferred defendant's case to Judge Feuer for trial.

**b.    Principles governing continuance motions**

"A continuance in a criminal case may be granted only for good cause. (§ 1050, subd. (e).) Whether good cause exists is a question for the trial court's discretion. [Citation.] The court must consider ""'not only the benefit which the moving party anticipates but also the likelihood that such benefit will result, the burden on other witnesses, jurors and the court and, above all, whether substantial justice will be accomplished or defeated by a granting of the motion.''" [Citation.] While a showing of good cause requires that both counsel and the defendant demonstrate they have prepared for trial with due diligence [citation], the trial court may not exercise its discretion 'so as

19

to deprive the defendant or his attorney of a reasonable opportunity to prepare.' [Citation.]" (*People v. Doolin* (2009) 45 Cal.4th 390, 450 (*Doolin*).)

"A reviewing court considers the circumstances of each case and the reasons presented for the request to determine whether a trial court's denial of a continuance was so arbitrary as to deny due process. [Citation.] Absent a showing of an abuse of discretion and prejudice, the trial court's denial does not warrant reversal." (*Doolin*, 45 Cal.4th at p. 450.)

A defendant has both state and federal constitutional rights and statutory rights to a speedy trial. (*People v. Harrison* (2005) 35 Cal.4th 208, 225.) Tension sometimes arises between the exercise of the right to a speedy trial and a defendant's constitutional right to the effective assistance of counsel. (*People v. Frye* (1998) 18 Cal.4th 894, 938–939, disapproved on another ground in *Doolin*, *supra*, 45 Cal.4th at p. 421, fn. 22.) "If the defendant is represented by counsel, counsel has the authority to waive defendant's statutory right to a speedy trial, at least in the absence of evidence showing incompetence of counsel." (*Harrison*, at p. 225.) However, "'a criminal defendant may not juggle his constitutional rights in an attempt to evade prosecution. He may not demand a speedy trial and demand adequate representation, and, by the simple expedient of refusing to cooperate with his attorney, force a trial court to choose between the two demands, in the hope that a reviewing court will find that the trial court has made the wrong choice.'" (*People v. Lomax* (2010) 49 Cal.4th 530, 556.)

### c.     The trial court erred by denying defendant's motion for continuance

A careful review of the record demonstrates that Judge Shapiro did not deny defendant's motion for a continuance, but instead deferred ruling on it and left the decision to Judge Schnegg because department 100 wanted the case transferred immediately. Indeed, preparation for that transfer apparently began the day before, soon after Judge Shapiro strongly urged defendant to accept a continuance to permit defense counsel to complete her investigation and even gave defendant directions to reconsider his stance overnight.

20

Judge Shapiro suggested Judge Schnegg could either grant a continuance "or send it back here with the request that I continue it." Thus, Judge Schnegg's belief that she could not grant a continuance because Judge Shapiro had denied the motion was erroneous. Defense counsel clearly contributed to this error by failing to correct Judge Schnegg's misunderstanding and, in fact, representing that Judge Shapiro had denied the motion. Nonetheless, the trial court did not exercise its discretion in ruling upon defendant's motion, but instead improperly denied it based upon a misunderstanding of the facts leading to a belief she lacked jurisdiction to grant it.

The Attorney General argues denial was proper because defendant had repeatedly opposed continuances and did not agree to waive time until after Judge Shapiro had ordered the case transferred to department 100. This might have justified denying a continuance, but it was not the basis of Judge Schnegg's denial. Moreover, although defendant's timing was poor, he did what Judge Shapiro had invited him to do on September 6: he thought about the situation and decided to waive time to allow his attorney to complete the outstanding *Pitchess* discovery. Thus, resort to defendant's prior unwillingness to waive time cannot support Judge Schnegg's denial of the renewed September 7 continuance motion.

### d. Further proceedings are required to determine prejudice

Defendant argues the error interfered with his constitutional right to the effective assistance of counsel by forcing "defense counsel to proceed to trial unprepared," and "wholly prevent[ing] [him] from developing evidence crucial to his defense, namely that the officers had lied about what they had seen and/or planted evidence to establish probable cause to search the van or to cover up the use of excessive force to detain" him. Defendant argues that prejudice should be presumed or assessed under the standard of *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824], i.e., the Attorney General would have the burden of proving beyond a reasonable doubt that the error did not contribute to the verdict. The Attorney General argues the error was one of state law only, to be evaluated pursuant to *People v. Watson* (1956) 46 Cal.2d 818, 836, i.e.,

21

defendant would have the burden of establishing a reasonable probability that, absent the error, he would have obtained a more favorable outcome. The Attorney General notes that although the *Pitchess* motion was granted with respect to the use of excessive force, the trial judge excluded all evidence of excessive force, so some or all of the *Pitchess* revelations would not have led to admissible evidence. The Attorney General contends defendant "has not established that the investigation would have resulted in any relevant, admissible information regarding the testifying officers."

We conclude the appellate record is inadequate to permit a determination of prejudice under either standard or even whether the error actually infringed upon defendant's right to the effective assistance of counsel. The *Pitchess* "hits" pertained to three officers who testified at trial and one who did not, and the allegations included both excessive force and "falsity issues." On September 6, defense counsel represented there were only 12 complainants or witnesses out of about 30 whom she still needed to locate and interview. Although counsel apparently developed nothing relevant and admissible from the 18 or so people who had been interviewed, it is possible that one or more of the remaining 12 could have provided her with credible impeachment evidence she could have utilized at trial to undermine the prosecution's case. It is equally possible that counsel would have developed either no relevant, admissible evidence or only very weak evidence from the pursuit of the 12 remaining complainants or witnesses. The only just and reasonable approach to determining whether the erroneous denial of the continuance motion prejudiced defendant is to reverse conditionally to allow further development of the record regarding the incomplete discovery.

## 6.     Directions to the trial court upon remand

Given the erroneous denial of the *Pitchess* motion with respect to Officer Salinas and the uncertainty whether the erroneous denial of defendant's continuance motion prejudiced defendant, we exercise our power under section 1260 to conditionally reverse the judgment and "remand the cause to the trial court for such further proceedings as may be just under the circumstances."

Upon remand, the trial court is directed to grant defendant's *Pitchess* motion with respect to Officer Salinas and conduct an in camera review of all records produced by the custodian of records for the LAPD. If the in camera review reveals no discoverable information in Salinas's personnel file that would lead to admissible evidence helpful to defendant's defense, defendant is not entitled to reversal of the judgment due to *Pitchess* error. If the in camera review reveals discoverable information that could lead to admissible evidence helpful to defendant's defense, the trial court shall grant the requested discovery, allow defendant a reasonable opportunity to determine whether the information would have led to any relevant, admissible evidence that he could have presented at trial. If defendant is able to demonstrate to the trial court that he was prejudiced by the denial of the discovery, the trial court must order a new trial.

The court shall also allow defendant a reasonable opportunity to complete an investigation with respect to the remaining 12 complainants or witnesses previously disclosed upon *Pitchess* review that defense investigators had not yet located and interviewed at the time defendant's continuance motion was denied on September 7, 2012. If defendant determines that completion of his investigation regarding these 12 individuals would have led to any relevant, admissible evidence that he could have presented at trial, the court must allow defendant a reasonable opportunity to demonstrate that he was prejudiced by the inability to present such evidence. If defendant establishes prejudice, the trial court must order a new trial. If defendant is unable to show any prejudice with respect to either of the aforementioned errors, the trial court shall reinstate the original judgment and sentence, which shall stand affirmed.

## DISPOSITION

The judgment is conditionally reversed. Upon remand, the trial court shall conduct an in camera review of the discoverable material in Officer Salinas's personnel file and order disclosure of any relevant information. The trial court must allow defendant a reasonable opportunity to investigate any information disclosed to determine whether the information would have led to any relevant, admissible evidence that he could have

23

presented at trial.  The trial court must also allow the defense a reasonable time to complete its investigation with respect to the *Pitchess* disclosure ordered July 20, 2012, to the extent the investigation had not been completed as of September 7, 2012, to determine whether completion of that investigation would have led to any relevant, admissible evidence that he could have presented at trial.  The trial court must allow defendant a reasonable opportunity to demonstrate prejudice from either (1) the failure to previously order disclosure matters from Salinas's personnel file, if any, or (2) the September 7, 2012 denial of a continuance to permit the defense to complete its investigation.  The trial court must order a new trial if there is a reasonable probability the outcome would have been different had information regarding Salinas been disclosed and/or the continuance granted.  If defendant is unable to show any prejudice with respect to either of the aforementioned errors, the trial court shall reinstate the original judgment and sentence, which shall stand affirmed.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


MOOR, J.*

We concur:


ROTHSCHILD, P. J.


CHANEY, J.

---

**\*** Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.