Filed 12/16/13  P. v. Freeman CA3

<u>**NOT TO BE PUBLISHED**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C070176 |
| Plaintiff and Respondent, | (Super. Ct. No. 09F06376) |
| v. | |
| JAMES EARL FREEMAN, | |
| Defendant and Appellant. | |

A jury convicted defendant James Earl Freeman of possession of cocaine base (Health & Saf. Code, § 11350, subd. (a)).  The trial court sustained a strike and four prior prison term allegations and sentenced him to eight years in state prison.

On appeal, defendant asks us to review the trial court's in camera determination that certain police personnel files did not contain any discoverable materials.  Finding the

trial court's in camera review of defendant's discovery request was impermissibly perfunctory, we conditionally reverse the judgment for the purpose of the trial court's conducting a new discovery hearing in camera.

## FACTUAL BACKGROUND

### *The Crime*

On August 22, 2009, Sacramento County Deputy Sheriff Jason Abbott and Sacramento Police Officer Steven Fontana were conducting regional transit fare enforcement investigations. At around 2:20 p.m., they saw defendant and Michael Scott[1] exit the south line train at the 47th Street station. Deputy Abbott contacted defendant and asked him for a train ticket, which defendant did not have. Defendant did not have identification, but gave Abbott his name and other identifying information.

Deputy Abbott directed defendant to sit on a bench by his patrol car while he conducted a records check. After the records check, Abbott searched defendant and found a baggie with a piece of rock cocaine in his right front pocket.

### *Defense*

Defendant testified that he had asked his uncle for some male enhancement pills the night before. His uncle went inside his trailer and returned a few minutes later with a "balled up" sandwich bag, which defendant put into his right pocket without checking.

On August 22, 2009, defendant met Scott at the Meadowview light rail station and they took the train. Neither defendant nor Scott bought a ticket because the machine was not working.

---

[1] Officer Fontana contacted Scott, who did not have a ticket. He ran a records check that confirmed the verbal identification Scott gave to him. Fontana issued a citation to Scott for fare evasion and released him.

When Deputy Abbott found defendant did not have a ticket, defendant tried to explain that the ticket machine was not working. Defendant gave his name and birth date to Abbott, who had him sit on a bench while the deputy went to his patrol car. Abbott returned from the patrol car and searched defendant, finding the sandwich bag he got from his uncle the night before. Defendant told Abbott about the male enhancement drug; Abbott searched the bag again and found another object—the cocaine. Abbott showed defendant what he found in the bag, which defendant had not seen before.

The parties stipulated that on August 22, 2009, one fare machine at the Meadowview station was broken and another machine was operational.

## The *Pitchess*[2] Hearing

Before trial, defendant brought two discovery motions seeking the personnel records of Deputy Abbott and Officer Fontana. As to both motions, the trial court (Hon. Peter Mering) found good cause was shown to review the officers' personnel files for evidence of racial bias or racial profiling. The trial court then conducted separate in camera hearings with representatives of both agencies.

The following is the entirety of the hearing on Officer Fontana. The court asks the questions, which are answered by Patrick Kohles, the custodian of records for the Sacramento Police Department.[3]

"Q. All right. Now, have you reviewed the records of the officer in question, which is Officer Fontana, as to the area I outlined or indicated was discoverable?

"A. Yes, Your Honor, I have.

---

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

[3] After taking the witness stand, Kohles was placed under oath by the court clerk. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1229-1230, fn. 4 (*Mooc*).)

"Q. All right. And are there any qualifying reports that need to be—that either are strictly within the Court's guidelines or, at least, close enough to require review by the Court?"

"A. No, Your Honor, there is not.

"Q. There are none?

"A. No, Officer Fontana has no formal investigations that have been conducted by my office.

"Q. Well, I think that's all I need to hear, right?

"[CITY ATTORNEY]: Sounds like it.

"[THE COURT]: I don't get enough of these to get good at them, but two in the last two weeks, so I'm beginning to recognize case names. Okay. So that's progress, I guess.

"Okay. Well, thank you very much. You may step down.

"[KOHLES]: Thank you, Your Honor."

The following is the in camera hearing on Deputy Abbott with the custodian of records, Jillian Kingston,[4] and Captain Scott Jones of the Sacramento Sheriff's Department:

"Q. All right. Ms. Kingston, have you reviewed your records as to Deputy Abbott?

"A. Yes, I have.

---

[4] Kingston was placed under oath by the court clerk.

"Q. And in the areas the Court outlined or—we call it an area—but the idea of or the concern of racial bias, displayed by the officer, or racial profiling in his conduct or performance of his duties, have you reviewed the records for those questions?

"A. Yes, I have.

"Q. And do you have any reports or disclosures that you believe qualify and should be presented to the Court?

"A. No, I do not.

"Q. You do not?

"A. Do not.

"Q. You don't have some borderline case that you should disclose and the Court should then decide if it qualifies?

"A. No, Your Honor.

"[THE COURT to CAPTAIN JONES]: Anything you want to offer from this witness?

"[CAPTAIN JONES]: No, Your Honor.

"[THE COURT]: All right.

"[CAPTAIN JONES]: Thank you.

"[THE COURT]: It wouldn't seem necessary. Okay. Thank you very much, ma'am.

"[KINGSTON]: Thank you.

"[THE COURT]: You may step down."

The trial court ended the in camera hearings and informed defendant it had received, through testimony, records of both officers and found nothing to disclose as there were no records relating to racial bias or racial profiling.

**DISCUSSION**

Defendant asks us to review the trial court's ruling that there were no discoverable materials in the officers' personnel records.

To compel discovery of confidential materials in peace officer personnel files (a right originating in *Pitchess*, *supra*, 11 Cal.3d 531 and later encoded in various statutes), a defendant must file an affidavit that establishes good cause in the form of a reasonable belief that the type of records requested are material to his defense and in the possession of the employing agency; only a relatively low threshold is necessary to compel discovery. (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1019.) Upon a finding of good cause, the trial court must then review the records in camera and disclose "only that information falling within the statutorily defined standards of relevance." (*Warrick,* at p. 1019.)

Fundamental to the procedure under the statutory scheme that codifies *Pitchess* is "the intervention of a neutral trial judge" to examine the records and determine what documents, if any, should be disclosed. (*Mooc*, *supra*, 26 Cal.4th at p. 1227 .) "Documents clearly irrelevant to a defendant's *Pitchess* request need not be presented to the trial court for in camera review"; however, "[t]he custodian should be prepared to state in chambers and for the record what other documents (or category of documents) not presented to the court were included in the complete personnel record, and why those were deemed irrelevant or otherwise nonresponsive to the defendant's *Pitchess* motion." (*Mooc*, at p. 1229.)

6

"Absent this information, the [trial] court cannot adequately assess the completeness of the custodian's review of the personnel files, nor can it establish the legitimacy of the custodian's decision to withhold documents contained therein. Such a procedure is necessary to satisfy the Supreme Court's pronouncement that 'the locus of decisionmaking' at a *Pitchess* hearing 'is to be the trial court, not the prosecution or the custodian of records.' " (*People v. Guevara* (2007) 148 Cal.App.4th 62, 69, quoting *Mooc, supra,* 26 Cal.4th at p. 1229 [sworn statement of custodian that records did not contain potentially discoverable materials was insufficient to satisfy trial court's obligation to review records; since custodian's sealed list of documents actually reviewed was not available for appellate review, must conditionally reverse for new hearing].)

The trial court failed to follow this procedure for proper *Pitchess* review. The two custodians did not present any documents for review, and the court did not question them about what documents or categories of documents were contained in the locations they reviewed. Rather, the trial court impermissibly deferred to the custodians' judgment about whether disclosure was appropriate, and did not make a record of the documents that were subject to their determinations. This leaves us unable to conduct any meaningful review on appeal.

Accordingly, we must conditionally reverse the judgment and remand for the trial court to conduct a new *Pitchess* hearing, at which it must personally review the personnel records and confirm the conclusions of the custodians of records. The court must also make a record of what it reviews, obtain a list or log of the records from the agency and place that document in the court record, or place sealed copies of the agency records in the court record. (*Mooc*, *supra*, 26 Cal.4th at p. 1228.) If, the trial court finds there was discoverable evidence, it must then determine whether defendant was prejudiced from the denial of discovery. (*People v. Hustead* (1999) 74 Cal.App.4th 410, 423.)

7

## DISPOSITION

The judgment is conditionally reversed. The cause is remanded to the trial court with directions to conduct a new *Pitchess* hearing in which it shall either conduct its own review of the relevant records or obtain a list of the documents that the custodians reviewed. If the trial court finds there is in fact discoverable evidence, it shall then determine whether defendant was prejudiced from the denial of discovery. If the court confirms the lack of discoverable evidence or finds that defendant was not prejudiced from the denial of discovery, the judgment shall be reinstated as of the date of its ruling to that effect. Otherwise, the trial court shall conduct further proceedings as are warranted.


          BUTZ          , J.


We concur:


       BLEASE       , Acting P. J.


       MURRAY      , J.