Filed 3/24/21  P. v. Solomon CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>VINCENT SOLOMON,<br><br>Defendant and Appellant. | F078998<br><br>(Super. Ct. No. 15CMS7201)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County.  Robert Shane Burns, Judge.

Alex Green, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Cameron M. Goodman, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Following a jury trial, defendant Vincent Solomon[1] was convicted of committing battery upon a correctional officer during defendant's incarceration (Pen. Code, § 4501.5),[2] and the jury also found true allegations that defendant had suffered prior serious felony convictions. Defendant was thereafter sentenced to a two-year prison term for the battery conviction. (§§ 667, subd. (e)(1), 1170.1, subd. (a), 4501.5.)[3] During the course of pretrial discovery proceedings, the trial court partially granted defendant's discovery motion under *Pitchess v. Superior Court* (1974) 11 Cal.3d 532 (*Pitchess*) for review of personnel records of various correctional officers.

On appeal, defendant challenges the trial court's denial of a portion of his *Pitchess* motion, and defendant requests we conduct an independent *Pitchess* review of the trial court's sealed proceedings as to the portion of the *Pitchess* motion the trial court granted. Having undertaken an independent *Pitchess* review of the personnel records, we find no abuse of discretion by the trial court. The sealed *Pitchess* proceedings before the trial court were detailed and thorough. Further, any error in denying defendant's *Pitchess* motion as to racial animus and/or bias related to two correctional officers was harmless.

## FACTUAL SUMMARY

According to correctional officer Jesse Arnett, on April 14, 2014, he was doing paperwork while defendant was scheduled to move to another part of the prison. Staff informed Arnett that defendant would not exit his cell to perform the transfer. Arnett

---

[1]  As defendant notes in his opening brief, this appeal is captioned "People v. Soloman," but defendant spells his last name "Solomon," and the trial records, including the felony complaint and information filed against him, reflect the correct spelling. This court has administratively corrected the title caption to address this issue.

[2]  All further statutory references are to the Penal Code unless otherwise indicated.

[3]  This sentence was ordered to be served consecutive to another four-year sentence in a separate case, Kings Superior Court case No. 15CMS-7345B, for an in-prison offense, and a two-year sentence for an in-prison offense in San Joaquin County, and to defendant's original out-of-prison offenses in Sacramento County.

walked to defendant's cell and defendant told Arnett he would not leave his cell unless he was allowed to inventory his own property (a task performed by correctional officers). When defendant would not relent, Arnett notified his chain of command that he and others were going to perform a cell extraction. This process included giving defendant a cooling off period to see if he would comply. If not, then a team of officers would prepare for the extraction by putting on personal protective equipment and preparing a video camera.

While officers were getting ready, defendant was yelling from his cell that he would come out, so Arnett then went to get a waist restraint and asked correctional officer Torres to help him move defendant. After Torres completed an unclothed body search of defendant, Arnett told defendant to place his hands through the cell door's food port so that the waist restraint could be applied. Defendant seemed to be compliant, but when Arnett went to put the waist restraint on defendant's left hand, defendant grabbed Arnett's left wrist and pulled Arnett's arm through the food port. When defendant would not let go of his wrist, Arnett applied pepper spray to defendant and defendant let go.

Arnett was instructed to leave the unit immediately, so he was unsure what happened to defendant after he left and he did not know what injuries if any defendant received other than the pepper spray. Arnett also had no idea what happened to defendant's property after this incident.

Torres, who was standing behind Arnett during the incident, corroborated this version of events. When Arnett was placing the restraint on defendant's left wrist, defendant grabbed Arnett's wrist and pulled his arm through the food port. Arnett gave defendant verbal commands to release his arm, but defendant did not comply. Arnett then grabbed his pepper spray and gave two or three bursts of spray through the food port, and defendant released his grasp. The incident only lasted a few seconds, and Torres was not aware that anyone was videotaping at that time. Torres was also unaware whether defendant was injured.

3.

Correctional officer Nathan Scaife was also standing behind Arnett when the incident with defendant occurred. According to him, no one was videotaping, and he did not believe there were any inmates outside of their cells. After the incident was under control, he and another officer took defendant out of his cell and put him in a shower because he had been pepper sprayed. After that, he drove Arnett to the prison hospital for a medical evaluation and took photos of Arnett's injury. Scaife returned to the housing unit to take crime scene photographs, and he took a photograph of defendant after he had been pepper sprayed and returned to his cell. Scaife testified the photograph could not have been taken more than an hour after the incident. He was unaware whether defendant had any injuries.

The defense called correctional officer Anthony Randolph, who testified he could not recall operating a video camera on the day of the incident. Correctional officer Timothy Sanders was called as a defense witness and, while he remembered the incident, he did not recall writing any report, interviewing defendant or taking any photographs.

Joshua Fielder, a psychology technician, testified he had interaction with defendant after the incident when he was taken to the shower to be decontaminated from the pepper spray. Fielder tried to make sure defendant did not have any issues breathing or other distress after the incident, and he recalled defendant was breathing and upright with no visible injuries. Defendant was, however, upset and unhappy with the situation. Fielder recalled Arnett had redness on his arm, and that he had referred Arnett to the on-site registered nurse, Brett Marean. Marean testified he documented Arnett's injuries, which included redness and an abrasion on Arnett's left wrist.

Inmate Edward W. testified he had been housed in a cell across from defendant. He heard defendant in a "ruckus" because an officer would not bring defendant's stuff back to him. The officer and defendant were talking, but then defendant's stuff "got trashed" and officers "drug [defendant] out," pepper sprayed and beat him. Two officers then dragged defendant around the corner and Edward saw nothing further.

Inmate Robert G. was in the upper tier across from defendant's lower cell and could see down into defendant's cell. Robert testified the issues between defendant and the officers was an "ongoing thing." He thought defendant was the type of inmate who would advocate for himself, and there were multiple occasions when there was a lot of activity at his door. On the day of the incident, officers were walking defendant in shackles back to his cell and there was an argument about defendant's property. A bunch of officers then swarmed defendant, they pepper sprayed him for no reason, and then "just basically left him."

Defendant testified Arnett came to his cell that day and ordered him to pack up because defendant was being transferred to a different unit. Defendant became upset because he had a documented enemy in the unit to which they were transferring him, which he explained to Arnett. Arnett then suited up with an extraction team of six or seven officers, including officers Randolph, Ruiz, Scaife, Gomez and Torres, and approached defendant's cell. Arnett threatened to pepper spray defendant, and defendant asked for a psychology technician. When Randolph, who was videotaping, repeated they were going to pepper spray him, defendant agreed to come out of his cell. Arnett then approached defendant's cell with a waist chain.

When facing the cell door, defendant stuck his hand through the food port. As Arnett was chaining defendant, Arnett pulled the chain through the food port and started spraying defendant with the pepper spray. Defendant denied he ever pulled Arnett's arm through the food port. After Arnett pepper sprayed defendant, Arnett and Scaife opened the cell, took defendant to the ground, and started beating him. There were a total of seven officers present. They put leg irons on defendant and a triangle in his back. They hogtied him, took him to the shower, and dropped him on his face. As a result, defendant lost several teeth, had two back eyes, and his lip was "busted."

Defendant testified he was not decontaminated in the shower, but was instead left lying there for an hour while officers took everything out of his cell and threw it and

5.

smashed it. Then they picked up defendant in the shower and dropped him back in his cell. They took off the restraints and told him if he moved they would kill him. Defendant asked for medical attention, but it was denied for two days. After that, defendant had to have mouth surgery to remove a broken tooth from his gum that required three or four stitches.

As to a photograph of him that had been admitted into evidence, defendant testified it was taken as officers were putting on their extraction suits before the incident, not after the incident as Scaife had claimed. Defendant also testified officers Randolph, Wilson and Sanders took pictures and video of his injuries just as they had done of Arnett.

In rebuttal testimony, Arnett claimed defendant had never said anything to him about having an enemy at the transfer unit; had that happened, Arnett would have looked into it. Arnett denied that the incident had been videotaped, and stated the video camera was in his office being charged for the cell extraction that never occurred.

The jury found defendant guilty of battery of a nonconfined person and found true prior serious felony convictions. Defendant was sentenced to a two-year term (one year as one-third of the three-year middle term, doubled for a prior strike). (§§ 667, subd. (e)(1) & (e)(2)(C), 1170.1, subd. (a), 4501.5.) Defendant filed a timely notice of appeal.

## DISCUSSION

### I.  *Pitchess* Motion Regarding Racial Bias

#### A.  Background

In August 2017, defendant filed a *Pitchess* motion seeking discovery from the personnel files of Officers Arnett, Torres, Ruiz and Randolph regarding (1) prior use of ethnic or "radical" bias; (2) falsifying information on rules violation reports; (3) planting evidence; and (4) excessive use of force.

6.

Defense counsel submitted a declaration indicating the requested documents were relevant to a defense of the charges and it was material for the effective and proper preparation of a defense, cross-examination and impeachment of the prosecution's witnesses, and for assessment of witness credibility.

In September 2017, defendant provided a declaration to support the *Pitchess* motion. He stated that after the incident, he was removed by Arnett, Torres, Ruiz and Randolph and then pepper sprayed and beaten; the incident was videotaped; the charges against him were false; the version of events described by the officers were false; derogatory racial statements were made by correction personnel to defendant "and their dislike of me due to past encounters with their colleagues that resulted in reprimand and disciplinary actions formed the basis on which their ethnic and racial bias stemmed"; and defendant's version of events contradicts the officers' versions and shows correctional officer misconduct.

A hearing was held on the motion on September 29, 2017, and the court denied the motion as to use of force and racial prejudice, but granted the motion as to discovery relevant to dishonesty/report falsification. An in camera review was set for October 12, 2017, which was subsequently continued to allow defense counsel to clarify the motion and the supporting declarations and resubmit them.

Defendant filed a supplemental declaration in support of the *Pitchess* motion on October 24, 2017. Defendant clarified it was Arnett and Torres who yelled racial epithets at him when they pepper sprayed him. Defendant also specified that the written reports of Arnett, Ruiz, Randolph, and Torres were false.

Another hearing was held on October 24, 2017. The court agreed with California Department of Corrections and Rehabilitation's argument that Officer Randolph was not a percipient witness and there was, as such, no support for review of his personnel file related to falsification of reports, and that as to excessive force allegations, defendant's declaration was too general with respect to Officers Ruiz and Randolph. The court did

7.

not specifically address discovery of evidence relevant to racial prejudice as to Arnett and Torres, and defense counsel submitted the motion for decision without specific argument about racial prejudice. The court granted the *Pitchess* motion with respect to discovery of information related to dishonesty and report falsification as to Officers Arnett, Torres and Ruiz and as to any alleged use of excessive force by Arnett and Torres. An in camera review of the personnel records was performed by the court, and 38 names and contact information were disclosed to defendant.

Defendant argues he established good cause to grant the *Pitchess* motion with respect to discovery of evidence relevant to racial bias/prejudice of Arnett and Torres, and the trial court erred in failing to do so.

### B. Legal Standard

To obtain a correctional officer's personnel information under *Pitchess*, the defendant must file a written motion. (Evid. Code, § 1043, subd. (a).) The motion must describe "the type of records or information sought" and include "[a]ffidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that the governmental agency identified has the records or information from the records." (*Id.*, subd. (b)(2) & (3).)

The good cause showing required under the statute "is a 'relatively low threshold for discovery.'" (*Garcia v. Superior Court* (2007) 42 Cal.4th 63, 70 (*Garcia*).) The affidavits may be predicated on "'information and belief and need not be based on personal knowledge [citation], but the information sought must be requested with sufficient specificity to preclude the possibility of a defendant's simply casting about for any helpful information.'" (*Ibid.*) If good cause is established, the trial court is required to review the records to determine what, if any, information should be disclosed. (*Id.* at pp. 70–71.)

8.

A good cause showing of materiality, as supported by affidavits, "'must propose a defense or defenses to the pending charges'" (*Garcia*, *supra*, 42 Cal.4th at p. 71.) To show materiality, there must be a logical link between the defense proposed and the pending charge, and an articulation how the discovery sought would support such a defense or how it would impeach the officer's version of events. (*Ibid.*) "The information sought must be described with some specificity to ensure that the defendant's request is 'limited to instances of officer misconduct related to the misconduct asserted by the defendant.'" (*Ibid.*, quoting *Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1021 (*Warrick*).)

Counsel's affidavit must also describe a factual scenario that would support a defense claim of officer misconduct. "That factual scenario, depending on the circumstances of the case, may consist of a denial of the facts asserted in the police report." (*Warrick*, *supra*, 35 Cal.4th at pp. 1024–1025.) "In other cases, the trial court hearing a *Pitchess* motion will have before it defense counsel's affidavit, and in addition a police report, witness statements, or other pertinent documents. The court then determines whether [the] defendant's averments, '[v]iewed in conduction with the police reports' and any other documents, suffice to 'establish a plausible factual foundation' for the alleged officer misconduct and to 'articulate a valid theory as to how the information sought might be admissible' at trial." (*Id.* at p. 1025.)

"Corroboration of or motivation for alleged officer misconduct is not required. [Citation.] Rather, 'a plausible scenario of officer misconduct is one that might or could have occurred.' [Citation.] A scenario is plausible when it asserts specific misconduct that is both internally consistent and supports the proposed defense. [Citation.] 'A defendant must also show how the information sought could lead to or be evidence potentially admissible at trial.' [Citation.] A defendant who meets this burden has demonstrated the materiality requirement of [Evidence Code] section 1043." (*Garcia*, *supra*, 42 Cal.4th at p. 71.)

9.

"A motion for discovery of peace officer personnel records is addressed to the sound discretion of the trial court, reviewable for abuse." (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039, disapproved on another ground in *Facebook, Inc. v. Superior Court* (*Touchstone*) (2020) 10 Cal.5th 329, 345, fn. 6.)

## C.    Analysis

Defendant argues his sole defense was that officers were lying when they reported defendant had assaulted Arnett. In his supplemental declaration, defendant attested Arnett and Torres yelled racial epithets at him, which he argues clearly implicated part of his defense that officers' racial animus was a possible motive for the assault and their false reports and bore on their credibility.

The People respond that defendant's declarations failed to specify the content of the racial epithets and contained merely a boilerplate allegation rather than a specific and plausible factual scenario that the officers acted due to racial bias.

One legitimate goal of discovery is to obtain information for possible use to impeach or cross-examine adverse witnesses, and *Pitchess* motions are proper for issues relating to credibility. (*People v. Hustead* (1999) 74 Cal.App.4th 410, 417, citing *Larry E. v. Superior Court* (1987) 194 Cal.App.3d 25, 28–33 & *Pierre C. v. Superior Court* (1984) 159 Cal.App.3d 1120, 1122–1123.) Defendant's allegation of racial animus and/or bias exhibited by Torres and Arnett is relevant to their credibility and circumstances that might lend support to defendant's version of events.

However, even assuming defendant set forth good cause for discovery of information relevant to racial bias or animus, the failure to grant this portion of defendant's *Pitchess* motion and review Arnett's and Torres's personnel records on this basis was harmless. Each custodian of records was placed under oath and attested, pursuant to the trial court's questioning, they had produced *all* personnel records related to Arnett and Torres, not just those that might be responsive and relevant to defendant's motion and supporting declarations. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1229

(*Mooc*) ["The custodian should be prepared to state in chambers and for the record what other documents (or category of documents) not presented to the court were included in the complete personnel record, and why those were deemed irrelevant or otherwise nonresponsive to the defendant's *Pitchess* motion."].) The trial court's review of these records was both thorough and detailed. Pursuant to our independent review of the proceedings and documents considered, as defendant requests and as discussed further below, confirms no materials or information relevant to racial bias or prejudice was withheld. Thus, the trial court's failure to grant defendant's *Pitchess* motion to review Arnett's and Torres's records for information relevant to potential racial animus or bias was harmless.[4]

## II.     Independent *Pitchess* Review

Defendant requests that we conduct an independent *Pitchess* review on appeal to ensure the trial court's in camera review of Arnett's, Torres's, and Ruiz's records as to allegations of fabrication and use of excessive force was performed in the proper manner and did not constitute an abuse of discretion. The People do not object.

*Pitchess* motions are the well-settled mechanism by which defendants can screen law enforcement personnel files for evidence that may be relevant to their defense without compromising the officer's reasonable expectation of privacy in those records. (*Mooc*, *supra*, 26 Cal.4th at p. 1227.) Subject to various restrictions not relevant here, a trial court must conduct an in camera review of potentially relevant personnel files if the defendant makes a showing of good cause for the discovery. (*Id*. at p. 1226.)

"The trial court may not disclose complaints more than five years old, the 'conclusions of any officer' who investigates a citizen complaint of police misconduct, or facts 'so remote as to make [their] disclosure of little or no practical benefit.' [Citations.]

---

[4]     As we reach defendant's claim of error in this regard, and the People do not claim the issue was forfeited, we decline to address defendant's alternative claim of ineffective assistance of counsel in failing to preserve the issue for appeal.

Typically, the trial court discloses only the names, addresses, and telephone numbers of individuals who have witnessed, or have previously filed complaints about, similar misconduct by the officer. [Citation.] That practice 'imposes a further safeguard to protect officer privacy where the relevance of the information sought is minimal and the officer's privacy concerns are substantial.'" (*Warrick*, *supra*, 35 Cal.4th at p. 1019.)

This process is effectuated by having a custodian of records collect all potentially relevant documents from identified personnel files and present them to the trial court. The custodian "should be prepared to state in chambers and for the record what other documents (or category of documents) not presented to the court were included in the complete personnel record, and why those were deemed irrelevant or otherwise nonresponsive to the defendant's *Pitchess* motion." (*Mooc*, *supra*, 26 Cal.4th at p. 1229.)

The trial court must then make a record of what documents it has examined to permit future appellate review. (*Mooc*, *supra*, 26 Cal.4th at p. 1229.) "If the documents produced by the custodian are not voluminous, the court can photocopy them and place them in a confidential file. Alternatively, the court can prepare a list of the documents it considered, or simply state for the record what documents it examined." (*Ibid.*) These proceedings are then sealed. (*Ibid.*)

On appeal, we independently examine the record made by the trial court to determine whether the trial court abused its discretion in determining what records would or would not be disclosed. (*People v. Prince* (2007) 40 Cal.4th 1179, 1285.)

The trial court determined there were 38 names and contact information in the personnel records that were responsive to defendant's *Pitchess* motion that required disclosure. We have reviewed the entire set of transcripts and documents relevant to this issue. The trial court thoroughly complied with the required *Pitchess* procedures. Three custodians of record were present and placed under oath. Potentially relevant documents were reviewed and considered in light of defendant's discovery motion. The court created an accounting of what was received, produced the relevant information, and

placed on the record why any undisclosed information was not relevant or subject to production. These proceedings were recorded stenographically by a court reporter. (*Mooc*, *supra*, 26 Cal.4th at p. 1229.) We conclude the trial court did not abuse its discretion in these proceedings with respect to its review of the materials in Officer Arnett's, Torres's and Ruiz's personnel files.

## DISPOSITION

Defendant was sentenced in this case (Kings Super. Ct. case No. 15CMS-7201) along with another case (Kings Super. Ct. case No. 15CMS-7345B) where he was convicted of additional in-custody offenses. Separate appeals were taken in each case. Due to a sentencing error in Kings Superior Court case No. 15CMS-7345B (case No. F078997), resentencing in both cases will be required as specified in our opinion issued in case No. F078997. (Cal. Rules of Court, rule 4.452.) The judgment is otherwise affirmed.

MEEHAN, J.

WE CONCUR:

FRANSON, Acting P.J.

SNAUFFER, J.